[Crim. No. 8716. Second Dist., Div. Two. Sept. 19, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. AUGUSTINE LAVANDER VILLANUEVA et al., Defendants and Appellants.

Richard Walton, under appointment by the District Court of Appeal, and Dahlstrum & Walton for Defendants and Appellants.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and H. Warren Siegel, Deputy Attorney General, for Plaintiff and Respondent.

FOX, P. J.—Defendants were convicted of the unlawful possession of heroin for sale in violation of section 11500.5, Health and Safety Code. The court found that Villanueva had suffered a prior felony conviction for robbery. He was sentenced to the state prison. Miss Cabral was granted probation for six years, the first year to be spent in the county jail. Villanueva has appealed from the judgment, sentence and denial of his motion for a new trial. Miss Cabral has appealed from the judgment (order granting probation) and the order denying her motion for a new trial.

During February 1962, Mrs. Marguerite Taylor, manager of an apartment house at 1615 North Eastern Avenue, Los Angeles, rented one of the apartments—No. 1617 3/4—to defendants Cabral and Villanueva. Each paid a part of the rental and moved in that same day. Defendants gave the name of Mr. and Mrs. Robert Colon and it was by this name that they were known to Mrs. Taylor.

Within a short time after moving in, Mrs. Taylor, who was home caring for a sick husband, noticed a large amount of traffic in and out of the Colon apartment. She also noticed that all the windows and doors of the apartment had been covered with "Bon Ami" and foil so that one could not see into the apartment. During this occupancy Villanueva was seen entering and leaving the apartment at a variety of hours. On one occasion when Mrs. Taylor entered the rented premises, Villanueva was showering and dressing. When later arrested, keys to the apartment were found on Villanueva's person. He admitted that he had clothing belonging to him in the apartment.

On March 13, 1962, acting on information from a reliable informant that a person called "Gus" was committing a felony in one of Mrs. Taylor's apartments, Sergeants Fesler and Dorrell went to investigate the Eastern Avenue address. In a conversation with Mrs. Taylor the officers determined that Gus and the person known to her as Robert Colon were the same person. The officers, stationing themselves in Mrs. Taylor's apartment, observed the activities at the Cabral-Villanueva apartment for approximately 45 minutes; then Sergeant Fesler drove Sergeant Dorrell to the Hall of Justice for the purpose of obtaining a warrant to search the premises

and persons at 1617 3/4 North Eastern Avenue. Such warrant was obtained.

Officer Fesler returned to the Taylor apartment where he kept watch on the Cabral-Villanueva apartment throughout the afternoon of March 13. In the forenoon, a red Mercury was seen in the alley behind the apartment. It was occupied by Villanueva and Frank Chacon. During this period a salesman knocked at the door of the Cabral-Villanueva apartment but it was not opened—only a voice called from the inside. At 5 p.m. that afternoon the red Mercury with Villanueva and Chacon in it was again seen entering the alley behind the apartment. At this point, Fesler and Dorrell, with the permission of Mrs. Taylor, entered the basement of the apartment house and made their way to a door which opens into that area from defendants' apartment.

Because of the earlier reluctance of the occupant to open the door to a salesman and because he believed a felony was being committed, Sergeant Fesler concluded that if he made known the purpose of his entrance and search, admittance would be refused and possible incriminating evidence destroyed. For these reasons the officers kicked open the door of defendants' apartment, rushed in, and during the ensuing search found 30 grams of 90 per cent pure heroin on the lid of the toilet tank which was placed crosswise on the toilet in the bathroom.

Miss Cabral was arrested in the apartment. Villanueva and Chacon were arrested outside by two other officers. They were taken into the apartment where large quantities of milk sugar, used for cutting heroin, had been found. Villanueva asked whether any narcotics had been found. He was shown the material taken from the bathroom and was asked what he thought it was. He replied that he thought it was heroin.

Chacon, Cabral and Villanueva were then removed to the Police Building for interrogation. On the person of Chacon was found a hand-drawn map of the Mexican border with certain locations on the Mexico side depicted on it. Chacon stated that the map was Villanueva's. He stated that he had spent the previous night in the apartment with Miss Cabral and Villanueva. Although Villanueva admitted having clothes in the apartment, he later denied it and claimed that he did not live with Miss Cabral but did frequently "shack up with her."

Villanueva testified that he loaned Miss Cabral $10 toward the rent because she did not have the full amount; that he lived at 1500 North Miller Avenue; had never lived at the

Eastern Avenue address; was never known as Robert Colon; and he did not have any knowledge of what the substance was which was found in the bathroom of the apartment. Chacon testified that the narcotics found in the bathroom were his; that he had lived at the apartment for two weeks prior to this incident; that he had given Villanueva the key to the apartment; that his previous denial of knowledge of the narcotics was untrue and that he made it because he was scared. Miss Cabral did not testify.

In seeking reversal, both defendants contend that all the evidence of possession of heroin for sale was obtained as a result of a forcible entry in execution of the warrant and was thus the product of an illegal search and seizure by virtue of the 4th amendment as incorporated in the 14th, and was therefore inadmissible in evidence. Defendant Villanueva makes the further contention that the People failed to prove an essential element of the crime charged, namely, that he knew the heroin was in the apartment.

Defendants do not contend that the search warrant was illegal or stale. They argue only that its execution, contrary to the provisions of section 1531 of the Penal Code, vitiated the warrant's legality and made the arrest of defendants and the search of the premises jointly rented by them, illegal. Section 1531 reads: "The officer may break open any outer or inner door or window of a house, or any part of a house or anything therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance." Although this section was enacted in 1872 it has never been interpreted by a reviewing court. However, section 844 of the Penal Code, which is identical in principle with section 1531, has been interpreted in a number of cases. Section 844 reads: "To make an arrest, a private person, if the offense be a felony, and in all cases a peace-officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

In *People* v. *Maddox*, 46 Cal.2d 301 [294 P.2d 6], the Supreme Court had occasion to interpret section 844. In this case officers had kicked down a door in order to quickly arrest one who they believed was violating the law relative to possession of narcotics. Maddox claimed that his arrest was illegal because the officers did not comply with section 844. The court held that under the circumstances the failure to

comply with section 844 did not make the entry or search unreasonable. In the course of the opinion, the court made these observations (p. 306) which are apposite in the instant case: "Suspects have no constitutional right to destroy or dispose of evidence, and no basic constitutional guarantees are violated because an officer succeeds in getting to a place where he is entitled to be more quickly than he would, had he complied with section 844. Moreover, since the demand and explanation requirements of section 844 are a codification of the common law, they may reasonably be interpreted as limited by the common law rules that compliance is not, required if the officer's peril would have been increased or the arrest frustrated had he demanded entrance and stated his purpose. [Citations.] Without the benefit of hindsight and ordinarily on the spur of the moment, the officer must decide these questions in the first instance." The court further pointed out (pp. 306-307) that if the officer in good faith believes "that compliance with section 844 is excused, his failure to comply with the formal requirements of that section does not justify the exclusion of the evidence he obtains."

Here the officers had a warrant giving them the right to search the premises at 1617 3/4 North Eastern Avenue. They had reason to believe that compliance with section 1531 would be futile and would permit the occupants to destroy incriminating evidence. Sergeant Fesler went to the apartment because of information received from a reliable source that a felony was being committed there. He testified that he believed that a demand for admittance would be futile because earlier in the day a salesman went to the door and knocked on it but received no response other than a voice from the inside calling to him. If the occupant, Miss Cabral, would not open the door for a salesman, it was not unreasonable to believe that she would not open the door for an officer had he made known to her "his authority and purpose." The fact that the occupants of the apartment had coated the windows with Bon Ami and tinfoil justifies the inference that they desired to maintain a high degree of secrecy as to what went on in their apartment. Sergeant Dorrell had participated in 50 to 100 narcotic arrests where an attempt had been made to destroy evidence. The officers believed that compliance with section 1531 would lead to the destruction of incriminating contraband. This proved to be a justifiable belief. The heroin seized was located on the lavatory cover which had been placed crosswise on the toilet bowl. Only a

flick of the lever was necessary to send the heroin down the drain. Under similar circumstances the court held in *Maddox* that the evidence seized was admissible although the officers had not complied with section 844. Since both section 844 and section 1531 impose a similar restraint on peace officers, the admission of the evidence in the instant case was proper.

The principle of *Maddox* has been consistently followed and represents the current law of this state. (*People* v. *Shelton,* 151 Cal.App.2d 587, 588 [311 P.2d 859]; *People* v. *King,* 140 Cal.App.2d 1, 7-9 [294 P.2d 972]; *People* v. *Sayles,* 140 Cal.App.2d 657, 661 [295 P.2d 579]; *People* v. *Bookout,* 197 Cal.App.2d 457 [17 Cal.Rptr. 213].) In the latter case, the court noted (p. 463): "The appellant asserts that the entry into his house was improper because there was not compliance with section 844 of the Penal Code. It is true that Sergeant Beckman broke open the door without 'having demanded admittance and explained the purpose for which admittance' was desired. But as said in *People* v. *Shelton,* 151 Cal.App.2d 587, at page 588 [311 P.2d 895]: 'The cases hold that where compliance with this provision would probably frustrate the arrest or permit the destruction of incriminating evidence compliance is not required. [Citations.]' "

The *Maddox* case was discussed and quoted in the recent case of *Ker* v. *State of California,* 374 U.S. 23, 39 - 40 [83 S. Ct. 623, 10 L.Ed.2d 726, at pp. 741-742]. It was held that the *Maddox* interpretation of section 844 violated no principle of the 4th Amendment. Thus the principles of *Maddox* remain unimpaired. By analogy, the failure of the officers under similar circumstances to observe the provisions of section 1531 would not violate any constitutional rights. It therefore follows that the entry of the officers was not illegal and that the evidence seized was admissible against defendants.

Assuming the seized contraband to be admissible in evidence, defendant Villanueva contends, however, that such evidence is insufficient to establish his guilt of possession. He does not contend that the heroin here seized was not being held for sale. In view of the large quantity of milk sugar found in the apartment it would be a reasonable inference that the contraband was so held.

The problem then reduces itself to this: Were there sufficient facts and circumstances which would justify an inference of knowing possession of the heroin by Villanueva? To establish unlawful possession of narcotics it must be shown that the accused had dominion and control over the

contraband with knowledge of its presence and narcotic character. (*People* v. *Redrick*, 55 Cal.2d 282, 285 [10 Cal.Rptr. 823, 359 P.2d 255].) To show such knowing possession the conduct of the defendant and the statements by him at the time of arrest may be sufficient. (*People* v. *Denne*, 141 Cal.App.2d 499, 511 [297 P.2d 451].) ''Possession and knowledge may be proved circumstantially ... [e]xclusive possession of the premises is not necessary nor is physical possession of the drug of the essence.'' (*People* v. *Flores*, 155 Cal.App.2d 347, 349 [318 P.2d 65].) Where, as here, the appeal is on the ground that the evidence is not sufficient to sustain the finding of the jury, ''the burden is on the appellant to demonstrate that there is no evidence of a sufficiently substantial character to support the verdict upon established facts and circumstances may be reconciled with the innocence of the accused.'' (*People* v. *Kuykendall*, 170 Cal.App.2d 250, 253 [338 P.2d 574].) ''The finding of narcotics in a room occupied by an accused raises a reasonable inference that the illegal drug is his even though he may share the room with another.'' (*People* v. *Elliott*, 186 Cal. App.2d 178, 185 [8 Cal.Rptr. 795].) Here there was testimony that Villanueva was a corenter of the apartment; that he was known as defendant Cabral's husband; that he went in and out of the premises quite frequently; that he was in the apartment during varying hours of the day and night; that he had a key to the apartment; that he had clothes there; that he showered and dressed there; and that he ''shacked up'' with his codefendant on frequent occasions. From this testimony there is reasonable basis for an inference that Villanueva had dominion and control over the contents of the apartment. In fact, appellant concedes that there is sufficient evidence to support the implied finding of the trial court that this defendant lived there. Only this defendant's corenter and cooccupier was in the apartment when the heroin was found. It was not secreted in a hidden place but openly on the lid of the toilet tank over the open bowl. This, of course, was a place a normal person would be expected to frequent from time to time. When Villanueva was arrested he asked the officers whether they had found narcotics. When confronted with the contraband that had been seized and asked what it was he said he thought it was heroin. When all these facts and circumstances are considered they adequately support the inference that Villanueva

was aware of the presence of the contraband and its narcotic character.

Appellants' reliance on *People* v. *Antista,* 129 Cal.App.2d 47 [276 P.2d 177], is misplaced. The facts in *Antista* are dissimilar to those in the instant case. See, for analysis of *Antista, People* v. *Dominguez,* 191 Cal.App.2d 704, 706-707 [12 Cal.Rptr. 910].

The purported appeals from the orders denying motions for a new trial are each dismissed since such an order is not now appealable.

The judgments are affirmed as to each defendant.

Ashburn, J., and Herndon, J., concurred.

A petition for a rehearing was denied October 2, 1963, and appellants' petition for a hearing by the Supreme Court was denied November 13, 1963.