FOURT, J.
 

 This is an appeal from a judgment of conviction of possessing heroin and marijuana for sale.
 

 In an information filed in Los Angeles on September 1, 1965, defendant and Rachel M. Gonzalez were charged in count I with possessing heroin for sale on August 6, 1965, and in count II with possessing marijuana for sale on August 6, 1965. Each of the defendants pleaded not guilty and, after many continuances granted at the request of the defendants, the cause went to trial without a jury on March 9, 1966. Defendants were found guilty as charged. Fernandez was sentenced to the state prison. The reporter's transcript recites:
 

 ‘1 The Court : On Count I, I sentence you to State Prison for the term prescribed by law.
 

 “On Count II, I sentence you to State Prison for the term prescribed by law, but the execution thereon is stayed pending any appeal and his compliance with sentence on Count I.
 

 “The stay will become permanent upon such compliance.’’
 

 The abstract of judgment in the clerk’s minutes recites that the defendant Fernandez was found guilty of a violation of section 11500, Health and Safety Code, as charged in the information and that the sentences as to counts I and II are to run concurrently with each other. The record discloses that the information charged a violation of section 11500.5, Health and Safety Code.
 

 In an engrossed settled statement on appeal it is stated:
 

 “The Office of the District Attorney, County of Los Angeles and James A. Wallace, Esq. submit the following condensed statement of portions of the oral proceedings deemed material to the determination of the points on appeal pursuant to the provisions of Rule 7 (a), California Rules of Court.
 

 “On August 6, 1965, at approximately 8:45 a.m., Los Angeles Police Officers, Lynn A. Leeds and William Slagle, arrived at 424 North Soto Street, Apartment 7, in the City of Los Angeles. They had in their possession a search warrant, Number 1191, for that location and the persons of Rachel Gonzalez and Martin Fernandez.
 

 
 *840
 
 “They went to the front door of the apartment and knocked, and could see underneath the front door and saw a shadow come to the front door. They saw the shadow stand still for a few seconds and then go hurriedly towards the front of the building, down the passageway towards the bathroom within the interior of the apartment.
 

 “After observing the shadow movement just described, and fearing that contraband might be destroyed, the officers forced the door and entered the apartment. They notified the occupants of the apartment that they had a search warrant and they further gave all of the occupants their constitutional rights—the right to an attorney, the right to remain silent—the right to an attorney present during questioning, and told them anything they said may be used against them. The rights were given to each occupant individually and each occupant responded in the affirmative that they understood each and every one of their constitutional rights. The occupants of the apartment at this time, excluding the Police Officers, were one Rachel Gonzalez, Martin Fernandez, Robert Villesoaz and Christine Gonzalez, the minor daughter of Rachel Gonzalez.
 

 ‘ ‘A
 
 search was then conducted of the premises. While Officer Leeds was searching another part of the premises, Officer Slagle approached Mr. Fernandez and asked what the bulge was in his pocket; and Mb. Fernandez said that it was tin foil. Officer Slagle removed two bulges and held them up to Mr. Fernandez. Mr. Fernandez said ‘the foil is mine.’ Officer Slagle opened the foil packages and showed Mr. Fernandez condoms which contained white powder, to which Mr. Fernandez responded ‘just the foil is mine.’ The contents of the foil packages and condoms contained twenty-one (21) grams of thirty per cent (30%) heroin.
 

 “A short time later, V. J. Maga and Lee Moody, Police Officers for the City of Los Angeles, arrived and assisted in the search. Officer Maga found a jacket on a chair in the living room, and in the pocket of the jacket there were two more foil-wrapped condoms containing a white powder. Prior to removing the foil packages, Officer Maga asked whose coat it was, and Mr. Fernandez stated that it was Ms coat. He was shown the two foil-wrapped packages and he stated that he did not know how they got into his coat. The two foil-wrapped packages'.contained twenty (20) grams of thirty per cent (30%) heroin.'
 

 “The search of the entire premises uncovered an additional one hundred and three (103) grams of thirty percent (30%)
 
 *841
 
 heroin, three hundred thirty-seven (337) grams of fifty per cent (50%) heroin and twenty-four (24) grams of marijuana.”
 

 Appellant now asserts that it was error to receive into evidence the contraband seized by the officers “in violation of section 844 of the California Penal Code and the Fourth Amendment of the United States Constitution.” Presumably appellant meant to mention Penal Code section 1531
 
 [1]
 
 for it (not section 844) is the section which governs under the circumstances. There is no contention with reference to the sufficiency of the affidavit for the search warrant or the search warrant itself. The record does not disclose whether an objection was made to the introduction of the evidence, but for the purposes here and to dispose of the cause we will assume that an objection was made at the proper time and in proper form and that it was overruled.
 

 We are persuaded that what is stated in
 
 People
 
 v.
 
 Villanueva,
 
 220 Cal.App.2d 443, 447 [33 Cal.Rptr. 811] disposes of the ease at bench—at pages 447-448 it is set forth: “Defendants do not contend that the search warrant was illegal or stale. They argue only that its execution, contrary to the provisions of section 1531 of the Penal Code, vitiated the warrant’s legality and made the arrest of defendants and the search of the premises jointly rented by them, illegal. Section 1531 reads: ‘The officer may break open any outer or inner door or window of a house, or any part of a house or anything therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance. ’ Although this section was enacted in 1872 it has never been interpreted by a reviewing court. However, section 844 of the Penal Code, which is identical in principle with section 1531, has been interpreted in a number of cases. Section 844 reads: ‘ To make an arrest, a private person, if the offense be a felony, and in all cases a peace-officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired.’
 

 “In
 
 People
 
 v. Maddox, 46 Cal.2d 301 [294 P.2d 6], the Supreme Court had occasion to interpret section 844. In this
 
 *842
 
 ease officers had kicked down a door in order to quickly arrest one who they believed was violating the law relative to possession of narcotics. Maddox claimed that his arrest was illegal because the officers did not comply with section 844. The court held that under the circumstances the failure to comply with section 844 did not make the entry or search unreasonable. In the course of the opinion, the court made these observations (p. 306) which are apposite in the instant case: ‘ Suspects have no constitutional right to destroy or dispose of evidence, and no basic constitutional guarantees are violated because an officer succeeds in getting to a place where he is entitled to be more quickly than he would, had he complied with section 844. Moreover, since the demand and explanation requirements of section 844 are a codification of the common law, they may reasonably be interpreted as limited by the common law rules that compliance is not required if the officer’s peril would have been increased or the arrest frustrated had he demanded entrance and stated his purpose. [Citations.] Without the benefit of hindsight and ordinarily on the spur of the moment, the officer must decide these questions in the first instance. ’ The court further pointed out (pp. 306-307) that if the officer in good faith believes ‘that compliance with section 844 is excused, his failure to comply with the formal requirements of that section does not justify the exclusion of the evidence he obtains. ’ ’ ’
 

 And on page 449, it is stated: “The principle of
 
 Maddox
 
 had been consistently followed and represents the current law of this state. [Citations.] In the latter ease, the court noted (p. 463) : ‘The appellant asserts that the entry into his house was improper because there was not compliance with section 844 of the Penal Code. It is true that Sergeant Beckman broke open the door without “having demanded admittance and explained the purpose for which admittance” was desired. But as said in
 
 People
 
 v.
 
 Shelton,
 
 151 Cal.App.2d 587, at page 588 [311 P.2d 859] : “The eases hold that where compliance with this provision would probably frustrate the arrest or permit the destruction of incriminating evidence compliance is not required. [Citations.] ” ’
 

 “The
 
 Maddox
 
 case was discussed and quoted in the recent case of
 
 Ker
 
 v.
 
 State of California
 
 [374 U.S. 23 (10 L.Ed.2d 726, 83 S.Ct. 623)]. It was held that the
 
 Maddox
 
 interpretation of section 844 violated no principle of the 4th Amendment. Thus the principles of
 
 Maddox
 
 remain unimpaired. By analogy, the failure of the officers under similar circum
 
 *843
 
 stances to observe the provisions of section 1531 would not violate any constitutional rights. It therefore follows that the entry of the officers was not illegal and that the evidence seized was admissible against defendants. ’ ’
 

 There can be no question but that under the circumstances the officers in the case at bench were excused from a strict and exact compliance with the provisions of section 1531, Penal Code. The officers feared that the contraband might be destroyed unless they acted as they did.
 

 It is clear from the record in this case that the clerk in preparing the minutes of the court and the abstract of judgment was careless and failed to insert the proper section of the Health and Safety Code under which appellant was charged and found guilty.
 

 The abstract of the judgment is corrected by striking out the figures “11500” in the clause reading, “Whereas the said defendant having been duly found guilty in this court of the crime of Violation op Section 11500, Health and Safety Code,” and substituting therefor the figures “11530.5” so that said sentence shall read, “Whereas the said defendant having been duly found guilty in this court of the crime of Violation op Section 11530.5, Health and Safety Code, a felony, as charged in Count I of the information and Violation op Section 11530.5, Health and Safety Code, a felony, as charged in Count 2.”
 

 As so corrected the judgment is affirmed.
 

 Wood, P. J., and Lillie, J., concurred.
 

 A petition for a rehearing was denied December 8, 1967, and appellant’s petition for a hearing by the Supreme Court was denied January 11, 1968.
 

 [1]
 

 Penal Code section 1531 provides as follows: ‘
 
 ‘ Officer may break open door, etc. to execute warrant [after admittance
 
 refused.] The officer may break open any outer or inner door or window of a house, or any part of a house or anything therein, to execute tlie warrant, if, after notice of his authority and purpose, he is refused admittance. ’'