[Crim. No. 13018.   Second Dist., Div. One.   Feb. 6, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. AMOS KENNETH JONES, Defendant and Appellant.

Marshall, Busby & Clark and Dwain Clark for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Brian Amer, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of two counts of selling a dangerous drug (amphetamine sulphate) and of violating the Dangerous Weapons' Control Law (possession of metal knuckles) and with possession of amphetamine sulphate for sale.

In an information (No. 315,775) filed in Los Angeles on January 4, 1966, defendant and James Rollins were charged in count I with selling amphetamine sulphate on September 21, 1965, in violation of section 11912, Health and Safety Code. It was further charged that defendant on three previous occasions had been convicted of a felony and had served time in a state prison in each instance therefor, namely, for robbery in Massachusetts in 1938, for attempted assault in New York in 1944, and for a violation of section 11500, Health and Safety Code in California in 1957. Defendant pleaded not guilty and denied the charged prior convictions.

In a subsequent information (No. 316,766) defendant was charged with possessing metal knuckles in violation of the Dangerous Weapons' Control Law and in a second count with possessing amphetamine sulphate for sale. The three prior felonies were also alleged. Defendant pleaded not guilty and denied the charged prior convictions.

The two informations were consolidated (the counts in No. 316,766 becoming counts III and IV in information numbered 315,775) and the cause proceeded to trial. A jury trial was

waived and it was stipulated that the matter be submitted upon the testimony taken at the preliminary hearings. The prosecution for some reason not apparent in the record did not present any evidence with reference to the charged prior convictions and, as a consequence, the court made no finding thereon. The defendant was found guilty as charged in each count. At the time of sentencing another then pending indictment of defendant for violations of the Health and Safety Code was dismissed "in the interest of justice." Defendant was sentenced to the state prison on each count, the terms to run concurrently. A timely notice of appeal was filed.

A résumé of some of the facts is as follows: On September 21, 1965, Officer Carrillo, an undercover narcotics division officer, contacted codefendant Rollins and inquired about getting some "pills." Rollins replied that he had none, but that he could take Officer Carrillo to where they "could make a connection." Officer Carrillo and Rollins got into a car and proceeded to 433 North Westlake where the men went to the door and Rollins knocked. They were let into the premises by defendant Jones. Officer Carrillo listened to a conversation between Rollins and Jones. Officer Carrillo wanted a "half a jar" for $17.50. A "jar" is slang for a quantity of 1,000 tablets. After talking with Jones, Rollins told Officer Carrillo that a "half a jar" would cost $20. Officer Carrillo than handed Rollins $35 and Rollins, in turn, handed the money to Jones. Jones left and when he returned he handed to Officer Carrillo a brown paper bag which contained white pills (408 grams) which it was ascertained upon analysis contained amphetamine.

Officer Carrillo on September 27, 1965, at about 7 p.m., went to 433 North Westlake, knocked on the door and was let into the premises by Jones. Officer Carrillo stated to Jones that he needed another jar of whites. There was some question about the price and Jones stated, "You know my prices. If you don't like it, you don't have to come here." Officer Carrillo handed $35 to Jones and Jones handed to the officer a plastic bottle containing white tablets (289 grams) which it was found upon analysis contained amphetamine.

On December 2, 1965, at about 3 p.m. Officer Garrahan with Officer Carrillo, Officer Frederickson and Officer Olson went to Jones' address at 433 North Westlake and Officer Carrillo knocked on the door. Officer Garrahan identified himself as a police officer and told Jones he was under arrest on a warrant for sale of amphetamine. Jones was advised of his then

constitutional rights. Officer Garrahan had been informed by Officer Carrillo that the prior sales had taken place at Jones' residence. After the arrest the premises were searched and in a windbreaker-type jacket in a closet were found numerous foil packages of pills and in a vacuum cleaner there was found a large quantity of white pills. Also found was a pair of metal (brass) knuckles in a dresser drawer in the dining room. Jones was asked where he got the brass knuckles and he stated that he "had found them on his front porch but they didn't fit him." The large number of pills were packaged as for sale. It was determined upon analysis of the pills that they contained amphetamine.

Appellant Jones now asserts that there is no proof that he had any knowledge of the narcotic nature of the contraband. In this case Officer Carrillo first inquired of Rollins about getting some "pills," they went to the residence of Jones and although there may have been other persons present there is no evidence that such other persons occupied the premises as such. On the second purchase by Officer Carrillo, there was to be true another person in the house with Jones but again there is no evidence of any occupancy as such by such other person. Jones answered the knock on the door and seemed to be in charge. Again on December 2, 1965, Jones was at the house where the sales had taken place. It is certain that all of the contraband was found at a location where Jones was present. It is also true that apparently Jones was the only person to answer the door alarms and was present at the house on every occasion of the officers' visits. It all adds up to a strong inference that the premises were under the control of Jones, that the contraband was under his control and that he knew of the nature and presence of the contraband at the location.

The finding of contraband in a room occupied by an accused raises a reasonable inference that the illegal drug is his even though he may share the room with another. (*People* v. *Villanueva*, 220 Cal.App.2d 443, 450 [33 Cal.Rptr. 811].)

The jargon used in the transactions, namely, a "half a jar" or a "bag" under the circumstances, could hardly mean anything other than a narcotics transaction. In *People* v. *Donohue*, 251 Cal.App.2d 272, 273 [59 Cal.Rptr. 417], it is stated that a "jar" is trade jargon for 1,000 amphetamine tablets. Furthermore, appellant must have known that he was dealing in illicit and illegal dangerous drugs or narcotics (if for no other reason) because of the price he was charging.

Appellant also contends that he was not told that an

attorney would be appointed for him in the event he could not afford to hire one under the rule of *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].) This case was called for trial on March 18, 1966; a stipulation was then entered into that the cause would be submitted upon the transcripts of the testimony taken at the preliminary hearings. The statement of appellant about the brass knuckles was in a preliminary hearing transcript. *Miranda, supra,* applies to cases commenced after June 13, 1966. This case obviously was started to trial on March 18, 1966, and as it ultimately developed, no evidence was submitted other than that contained in the transcripts of the preliminary hearings. There were no objections to the receipt of the evidence (the statement with reference to the brass knuckles) at the trial, and the point cannot now be raised on appeal.

It is to be noted that this case came to trial long after January 29, 1965, the date set for *Dorado* [62 Cal.2d 338 (42 Cal. Rptr. 169, 398 P.2d 361)]-*Escobedo* [378 U.S. 478 (12 L.Ed. 2d 977, 84 S.Ct. 1758)] objections.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.