[Civ. No. 4772. Fifth Dist. Nov. 2, 1979.]

In re GEOFFREY G., a Minor
HESTER M. MERVIN et al., Petitioners and Respondents, v.
GUSTAVE G., Objector and Appellant.

COUNSEL

Walter L. Gorelick, Public Defender, Gerald F. Sevier, Assistant Public Defender, and James T. Wilson, Deputy Public Defender, for Objector and Appellant.

Edgar D. Price for Petitioners and Respondents.

## OPINION

**FRETZ, J.***—This is an appeal from a judgment declaring Geoffrey G., a minor, free from the parental custody and control of appellant, his natural father, under the provisions of Civil Code section 232, subdivision (a) (4)[1] and granting a petition for adoption of the minor by his maternal grandmother and her husband (hereinafter grandparents).

Appellate review here necessitates an interpretation of the pertinent statute and its application to the circumstances of this case.

The facts disclose: The proceedings to sever the parental relationship were commenced by respondents, the minor's maternal grandparents, who filed a petition for adoption in the Tulare County Superior Court. The petition alleged that Geoffrey was entitled to be declared free from parental custody and control under Civil Code section 232, subdivision (a) (4), because the minor's natural father, appellant, was then "serving a prison sentence arising out of the homicide of the minor's natural mother and [appellant] is not a suitable person to continue to have the custody or control of said minor." Appellant, who was then incarcerated at the California Institution for Men at Chino, objected to the adoption of Geoffrey by the grandparents. A public defender was appointed to represent appellant in the proceedings to sever the parental relationship.

A hearing was held on September 12, 1978, at which time appellant was present with counsel. At appellant's request, the matter was referred to a probation officer for a report pursuant to Civil Code section 233; the probation officer was directed to investigate the circumstances of the minor and to recommend a disposition. The probation report contains the following background information on appellant and his son Geoffrey. The boy was born on January 12, 1976, to appellant and Barbara. Appellant had lived with Barbara for several years, although they were not married. Geoffrey resided with his parents in Long Beach, California, until his mother's death on December 30, 1977. The report states: "...It does not appear that the natural father assumed a great

---

*Assigned by the Chairperson of the Judicial Council.

[1]Section 232 provides in pertinent part: "An action may be brought for the purpose of having any person under the age of 18 years declared free from the custody and control of either or both of his parents when such person comes within any of the following descriptions:...(4) whose parent or parents are convicted of a felony, if the facts of the crime of which such parent or parents were convicted are of such nature as to prove the unfitness of such parent or parents to have the future custody and control of the child."

deal of responsibility for supporting or providing a home for the minor"; the home in which the family resided was owned by Barbara and her former husband, and she received welfare benefits for the support of Geoffrey throughout the time he lived with her.

Prior to his incarceration, appellant had been employed since 1967 as a carpet layer; he reported earning approximately $700 per month. Appellant, who was 36 years old at the time the probation report was filed, had an 11th grade education and had served in the armed forces, with an honorable discharge. He reported drinking alcoholic beverages, but denied any other use of drugs. His arrest record showed the following convictions: two convictions for drunk driving (in 1966 and 1967) for which appellant was placed on probation; one minor traffic offense for which appellant was fined and jailed for failure to appear; one incident of public intoxication for which appellant was fined; one conviction for possession of a marijuana plant for which appellant was placed on probation (dismissed under Pen. Code, § 1203.4); and a conviction for the voluntary manslaughter of Geoffrey's mother, for which appellant was sentenced to between six months and fifteen years in the state prison.[2]

A Los Angeles County probation report as of the date of creation of guardianship, indicated that appellant wanted the opportunity to raise his son; the report quoted appellant as stating it is "bad enough [that Geoffrey does not have a mother] and he should not have to live his life without a father." Appellant said he felt he had been a devoted father to the minor and for this reason it would be detrimental for the minor to be brought up without knowing who his father is. Appellant also indicated love for his son and said he felt he could bring him up to be a "good boy" given the opportunity.

The Tulare County report stated that Geoffrey was then in the custody of his maternal grandmother who was appointed Geoffrey's legal guardian May 24, 1977, in Los Angeles County. The grandparents have supported and cared for Geoffrey. While living with the grandparents, Geoffrey attended a day care center; the director of that center told the probation officer that Geoffrey was a happy, bubbly, well cared for child. The day care center director described how Geoffrey responded affectionately to the grandparents and called them "Mommy" and "Daddy."

---

[2]The record indicates that appellant was subsequently released on parole on or about May 17, 1979.

The grandparents related to the probation officer that while Geoffrey was in their custody, appellant only wrote to Geoffrey during the first year; these letters arrived about once a month. Also, appellant's relatives sent Geoffrey a package at Christmas.

The probation report also stated that appellant had not found a suitable guardian to take care of Geoffrey while appellant was incarcerated. Neither appellant's mother nor his sister wanted full custody of Geoffrey. However, before it was apparent that appellant would be incarcerated, his sister had offered to supervise Geoffrey during appellant's working hours. Appellant had hoped to care for his son in the evenings and on weekends if he had not gone to prison on the manslaughter conviction.

The reporting probation officer made the following recommendations: "As the minor's parents were never married, and it does not appear that the natural father assumed a great deal of responsibility for supporting or providing a home for the minor, it creates a serious question in the mind of the investigator of the father's legal rights to the custody and control of the minor. As the minor was only one year of age at the time of the mother's death, by an act of extreme violence by the father, it is also felt that there was little opportunity for the development of a strong, meaningful relationship between the minor and the father, which could be sustained through a period of years of separation while the father is incarcerated. It is therefore felt that it would be in the minor's best interest that he be declared free from the custody and control of his father, enabling him to have the security possible through his adoption."

The probation report containing the above information, as well as a report from the state department of social services, were received by the judge at the hearing on the adoption petition held on February 1, 1979. The court additionally received information from a report from the Los Angeles County Juvenile Court made at the time of creation of the guardianship in 1977.

This report noted appellant's concern that he would not be able to see his son if the grandparents adopted Geoffrey due to some hostility and the distance between them (appellant had resided in the Los Angeles area and the grandparents lived in Visalia). The report also contained information on the grandparents and depicted a stable economic situation and suitable living arrangements for Geoffrey.

The court also received the probation report prepared in connection with appellant's plea of nolo contendere to voluntary manslaughter, a lesser included offense to the charged offense of murder. That probation report attempted to set forth the circumstances of the homicide and stated in summary: Appellant stated that he had been arguing with Geoffrey's mother on the evening of her death. The argument apparently became physical and appellant grabbed Barbara to flip her to the ground. Appellant said he must have grabbed Barbara around the neck and held her harder than he thought. Apparently Barbara died of strangulation. The probation officer thought there was a "strong possibility" the death was accidental; he recommended appellant be granted probation.

At the hearing to free the minor from parental custody, the appellant testified and the court heard arguments from counsel. There was no court reporter at the hearing. At oral argument appellant's counsel indicated that the case was submitted to the trial court essentially on the exhibits that were admitted into evidence.

Several days after the hearing the judge issued a memorandum of decision stating that: "The Court finds from all of the evidence adduced both oral and documentary there is clear and convincing proof that it would be detrimental to Geoffrey to be returned to the custody and control of the respondent natural father and it would be in the best interest of the child to remain in the relationship and custody of the natural maternal grandparents, the petitioners herein.

"These findings are compelled by the evidence of the conviction of the respondent of the crime of voluntary manslaughter...wherein the respondent violently strangled the mother of the child after having consumed a substantial amount of intoxicants the night before. Also, from evidence that respondent at the time of the incident had a long established drinking problem as indicated by his statement to the Probation Officer that he was drinking 'upward of a six-pack' at the time and also, a criminal record indicating numerous past arrests and convictions for intoxication. The evidence further established that the respondent while earning approximately $600.00 net was not supporting the child who was being supported by public welfare in the form of Aid AFDC funds. All of these factors are indicative of serious personality flaws and emotional instability.

"From the evidence, it is also clear and convincing that it is in the best interest of Geoffrey to remain in the warm and stable family atmosphere where he has been nourished and has flourished as a well adjusted, happy child."

The judge then ordered that Geoffrey be declared free from the custody and control of his natural father. At the request of appellant, findings of fact and conclusions of law were prepared and signed by the judge. Among these findings were: "The best interests of the child are best served by having him remain in his present relationship with and in the custody of the natural maternal grandparents, Petitioners herein. Said finding is supported by clear and convincing evidence. . . ."

"Comparatively, the best interests of the child would not be served by placing him in the custody of Respondent, the biological father. Said finding of fact is supported by clear and convincing evidence. . . ."

Thereafter, the state department of social services submitted a report on the suitability of the grandparents as adoptive parents. There does not appear to be any argument as to their suitability. The adoption worker who prepared the report praised the grandparents as suitable parents and recommended that the adoption be granted. Judgment was duly entered granting the adoption.

Appellant contends on appeal (1) that no evidence was presented that appellant had been convicted of a felony as described in Civil Code section 232, subdivision (a) (4); (2) that the court failed to make an express finding that parental custody would be detrimental to the child as required in Civil Code section 4600 and (3) that the court failed to explore whether reasonable alternatives existed to severing the parental relationship. We consider each of those contentions in order.

■ As was succinctly stated in *Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925-926 [101 Cal.Rptr. 568, 496 P.2d 480]: "In resolving the issue of the sufficiency of the evidence, we are bound by the established rules of appellate review that all factual matters will be viewed most favorably to the prevailing party [citations] and in support of the judgment [citation]. All issues of creditibility are likewise within the province of the trier of fact. [Citation.] 'In brief, the appellate court ordinarily *looks only at the evidence supporting the successful party, and disregards the contrary showing.*' [Citation.] All conflicts, there-

fore, must be resolved in favor of the respondent. [Citation.]" (See also 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 245, pp. 4236-4238.)

■ Where the appeal is on the ground that the evidence is not sufficient to sustain the verdict, an appellant has the burden to demonstrate that there is no evidence of a sufficiently substantial character to support the verdict. (*People* v. *Villanueva* (1963) 220 Cal.App.2d 443, 450 [33 Cal.Rptr. 811]; *People* v. *Kuykendall* (1959) 170 Cal.App.2d 250, 253 [338 P.2d 574].)

"When two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court." (*Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.* (1967) 66 Cal. 2d 782, 784-785 [59 Cal.Rptr. 141, 427 P.2d 805].)

Applying those rules of law to the instant case, we conclude that the record discloses substantial evidence to support the judgment. In cases such as this, it is difficult to review facts without a reporter's transcript; none was provided here because there was no court reporter.[3]

■ While also subject to contrary inferences, the evidence before the trial judge is subject to the inference that the facts of the crime of which appellant was convicted was of such nature as to prove the unfitness of appellant to have the future custody and control of Geoffrey. Appellant violently strangled Geoffrey's mother after having consumed a substantial amount of intoxicants the night before. Appellant's criminal record showed numerous past arrests and convictions for intoxication; the trial judge could reasonably infer that appellant would continue his drinking habits and either do physical harm to the child while in a drunken rage or because of such intoxication fail to properly provide for the child, all resulting from what the trial judge in his

---

[3]Parties to these matters are well advised to request a reporter. Otherwise, the losing party may be faced with the impossible task of overcoming the rule of law that the appellant must affirmatively show error by an adequate record. On the other hand, any party, winner or loser, may be faced with the impossible task of overcoming the rule of law which requires the party seeking to terminate the parental relationship to show complete compliance with the law.

As Witkin points out at 6 Witkin, California Procedure, *supra,* Appeal, section 240, page 4232: "The rule of conflicting evidence necessarily precludes any successful appeal on insufficiency of evidence unless an adequate record is brought up. If the appeal is on the judgment roll alone...the evidence is conclusively presumed to support the judgment."

memorandum of decision called "serious personality flaws and emotional instability." The trial court may properly consider past criminal activities in determining whether a natural parent has rendered himself an unfit parent for the future by commission of a felony. (*Adoption of D. S. C.* (1979) 93 Cal.App.3d 14, 26-27 [155 Cal.Rptr. 406].) We cannot say that such inferences are unreasonable. We cannot say as a matter of law that the conclusion of the trial judge was error. Nor would an opposite conclusion have been error in the light of cases such as *In re James M.* (1976) 65 Cal.App.3d 254 [135 Cal.Rptr. 222] and in light of the suggestion of the probation office that the crime might have been accidental. Obviously, the sentencing court was not persuaded by the suggestion of the Los Angeles probation office that appellant not be imprisoned. The trial court here rejected any conclusion that the crime was accidental; concluded that the crime was deliberate; followed the reasonable inference hereinbefore mentioned and concluded that it was a Civil Code section 232, subdivision (a) (4), type of crime. It does not appear that the trial court concluded appellant was an unfit parent simply because he had committed a homicide. Rather the trial court considered the violent nature of the felony, coupled with the use of alcohol as an indication of unfitness. The trial judge specifically found that instead of just being a felony, the crime here was a felony under Civil Code section 232, subdivision (a) (4).

While a finding as to Civil Code section 232, subdivision (a) (4), could have been stated more clearly, we conclude that it is sufficiently clear that the trial judge was satisfied under the law that all of the requirements of that statute had been met.

On the record before us, we conclude that there was substantial evidence that appellant was convicted of a felony as described in Civil Code section 232, subdivision (a) (4). The inferences which the court could properly draw from the evidence were sufficient to establish a reasonable relationship between appellant's crime and his ability to parent. ■ Furthermore, while parenting is a fundamental right (*In re Carmaleta B.* (1978) 21 Cal.3d 482, 489 [146 Cal.Rptr. 623, 579 P.2d 514]), the decision to free a child from custody and control of the parent rests with the sound discretion of the trial court. (*Id.,* at pp. 494, 496.) "... [W]here a trial court has discretionary power to decide an issue, a reviewing court will not disturb that decision unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations]." (*Adoption of*

*D.S.C., supra,* 93 Cal.App.3d 14, 24-25.) There was no abuse of discretion on that issue in this case.

■ The contention that there was no finding that parental custody would be detrimental to the child is without merit. As the trial court stated in the memorandum of decision: "The Court finds...there is clear and convincing proof that it would be detrimental to Geoffrey to be returned to the custody and control of the respondent natural father and it would be in the best interest of the child to remain in the relationship and custody of the natural maternal grandparents, the petitioners herein." Such a statement is sufficient to satisfy the requirements of Civil Code section 4600 which section does not specify any particular form for findings thereunder. (See *In re Richard E.* (1978) 21 Cal.3d 349, 356-357 [146 Cal.Rptr. 604, 579 P.2d 495]; *Adoption of D. S. C., supra,* 93 Cal.App.3d 14, 21, fn. 4.)

■ Appellant next contends that before state action may be undertaken to involuntarily terminate the natural relationship of parent and child, less drastic alternatives, such as provision for child protection services, must be explored. Respondents assert that the question of less drastic alternatives was not ignored by the trial court. Respondents further contend, inter alia, that possible guardianship with relatives of appellant and prospective plans for custody by appellant were examined and discussed in the probation reports admitted as documentary evidence and that appellant's plans and proposals were deemed unsatisfactory in both the earlier guardianship proceeding and in the present proceeding and that this is an inappropriate case for offering child protection services. We agree with respondents that the court adequately considered this point.

The only alternative to placement of Geoffrey with his grandparents available at the time of the hearing was some attempt at future reunification of Geoffrey with his father at a time when his father was released from prison. It could not be productive of good to take Geoffrey from his grandparents, the only parents he knew, and place him with third parties. No other relatives were available. Realistically, therefore, the only alternative was some attempt at reunification with his father. But the court had already found the father was "unfit to have the future custody and control."

The hearing was commenced September 12, 1978. The father was in prison. The matter was continued so the probation officer might report.

On February 1, 1979, the court received additional evidence and the arguments of counsel. February 5, 1979, the court filed its memorandum of decision. Appellant was released from prison May 17, 1979.

The court quite obviously considered the only available alternative, to wit, placement with the father. The basic finding was that the father had been convicted of a felony of such nature as to prove his unfitness to have the future care and control of his son. There was a further finding that custody of his father would be detrimental to Geoffrey. In *In re Susan M.* (1975) 53 Cal.App.3d 300, 311 [125 Cal.Rptr. 707], this court said that consideration of whether child protective services should be ordered and proceedings delayed until the results were evaluated is a matter that lies within the discretion of the superior court. Further, this court said the superior court should take into consideration "whether the furnishing of such services would have been appropriate in the first instance" (*id.,* at p. 312). Here, it would be inconsistent with the first finding. The court sufficiently explored the alternatives.[4]

The judgment is affirmed.

Zenovich, J., concurred.

**HOPPER, Acting P. J.**—I respectfully dissent.

On the scanty record before us I am not persuaded that there was substantial evidence in the words of the statute that "[T]he facts of the crime of which such parent...[was] convicted are of such nature as to prove the unfitness of [the father] to have the future custody and control of the child." Nor do I believe the clear and convincing standard of proof required in Civil Code section 232 cases has been met. It may well be that if the proceedings had been reported that affirmance would be in order. As a reviewing court, without the benefit of a reporter's transcript, we are simply unaware of the colloquy, if any, between court and counsel and the precise evidence which was presented, all of which would assist us in determining the appeal. Considering the present state of the record I am unable to affirm.

A conclusion of law that the father's consent is not required because he has been convicted of a felony is not sufficient grounds under the

---

[4]See *In re Richard E., supra,* 21 Cal.3d 349, 356, where the California Supreme Court "deem[ed] the court's statements to constitute a finding...."

statute to sever the parent-child relationship. More is required. The trial court must find not only the commission of a felony but that the felony is such as is described in Civil Code section 232, subdivision (a) (4). While there may have been compliance with Civil Code section 4600 in this case, there was no finding on the issue whether the facts of the crime were of such nature as to prove the father's unfitness. Even if the various documents be construed to satisfy the requirement of such a finding, there remains the further issue whether there is substantial evidence to support such a finding. I submit there is far from substantial evidence to support such a finding in the instant case.

A careful reading of the record in this case really shows very little, if anything, other than that the father killed the mother. The determination as to whether the facts of a particular crime were of such nature as to prove the parent's unfitness must be made on a case-by-case basis, even where the crime is murder. (See *In re James M.* (1976) 65 Cal. App.3d 254, 263-266 [135 Cal.Rptr. 222]; 4 Markey, Cal. Family Law Practice and Procedure (1978) § 71.13, p. 71-18.) If the Legislature had intended to include all killings within the statute, it could have easily said so. The Legislature did not so choose. Unlike the facts in *Adoption of D. S. C.* (1979) 93 Cal.App.3d 14 [155 Cal.Rptr. 406], where the trial judge reasonably inferred that the "defendant had a propensity to violent crime, that he did not hesitate to involve family members of a tender age in crime, that he would turn to crime in the future should he find difficulty in making a living, and that he might violate parole and thus place himself in jeopardy of being taken from his family and returned to prison" (*id.,* at p. 25), although appellant's crime has been violent, there is no showing whatsoever of any propensity to violent crime and there is no showing about involvement of family members of a tender age or that he would find difficulty in making a living or that he might violate parole. For all that the record shows the violence here may very well have been isolated in nature. Appellant's crime is similar to that committed by the defendant in *In re James M., supra,* 65 Cal.App.3d 254, a murder case. As noted in the case at bar by the probation report filed before the sentencing of the appellant on the voluntary manslaughter charge to which he pled nolo contendere, "There is a strong possibility that the act was accidental. Additionally it does not appear that the [appellant] intentionally attempted to kill his wife." The probation officer at sentencing concluded that the defendant did need help in controlling his alcoholic problem but that he should not be sent to prison but rather should spend time in custody in jail under a work furlough program and be placed on probation under suitable

terms and conditions. While the sentencing judge did not follow the suggestion of the probation officer, from this record I cannot conclude one way or the other the reason the sentencing judge placed the appellant in prison. The record is just simply inadequate to show substantial evidence and to meet the clear and convincing standard of proof required in Civil Code section 232 actions.

The fundamental right of parentage is clearly established in this state (*In re Carmaleta B.* (1978) 21 Cal.3d 482, 489 [146 Cal.Rptr. 623, 579 P.2d 514]). I recognize the change of custody of a child, particularly one of tender years such as Geoffrey, may be detrimental to the best interests of the child. I also agree that the record shows Geoffrey has been well cared for and deeply loved by the grandparents. Nevertheless, the parent-child relationship cannot be severed in the absence of a statute. The only statute relied upon here was Civil Code section 232, subdivision (a) (4), and as previously indicated the evidence is inadequate to meet the statutory requirements.

The law is also clear that the trial court may properly consider the past criminal activities in deciding whether a natural parent has rendered himself an unfit parent for the future by commission of a felony. (*Adoption of D. S. C., supra,* 93 Cal.App.3d at p. 26.) Thus, the court could properly consider the fact that the appellant had an arrest record for alcoholic offenses. However, the record which we do have also notes an eight-year period of nonarrests for alcohol related offenses. Nowhere is there even a scintilla of evidence that appellant (in an intoxicated condition or otherwise) ever abused the child (or any children). The trial court also referred to the fact that the appellant was not supporting Geoffrey and that Geoffrey was being supported by public welfare. The trial judge then found that all of those factors are indicative of serious personality flaws and emotional instability. It is not clear from this record as to whether the factors which the trial court felt were indicative of personality flaws and emotional instability such as failure to provide for the support of his child are being used to find that the facts of the crime came within Civil Code section 232, subdivision (a) (4). I do not believe that the fact the child was on welfare and was not supported by appellant has any bearing whatsoever on whether the facts of appellant's crime fall within the statute. The fact of child support through welfare and the facts of this particular crime are simply unconnected in any way. In sum, there was simply insufficient evidence in the trial court to show that the statute applied insofar as the facts of the crime

are concerned. Consequently, the judgment should be reversed with directions to conduct a further hearing at which a reporter would be present.

In addition, I note that at the hearing the child was not represented by counsel. In *In re Richard E.* (1978) 21 Cal.3d 349, 354 [146 Cal.Rptr. 604, 579 P.2d 495], the California Supreme Court held that "appointment of counsel is...required in the absence of an affirmative showing the minor's interests would otherwise be protected.... [I]n absence of a showing on the issue of the need for independent counsel for a minor, failure to appoint constitutes error." *Richard E.* tells us (*id.,* at p. 355) that when there is no showing on the issue of the need for separate counsel there is no basis upon which the court could exercise its discretion not to appoint counsel. Pursuant to *Richard E.* separate counsel should be appointed at the commencement of proceedings absent an immediate showing upon which the court can exercise its discretion against making an appointment.

There is no showing in the record in the instant case on the issue of separate counsel for the child. Accordingly, failure to appoint separate counsel for Geoffrey constituted error. Under *Richard E.* failure to appoint counsel for a minor in a freedom from parental custody and control proceeding does not require reversal in the absence of a miscarriage of justice. Where, as here, emotions are high on both sides, the appointed counsel conceivably might have presented testimony favorable to severance or nonseverance and assisted the court. I have some difficulty in understanding how the record in the ordinary case would ever show what independent counsel might have done for a minor (see *In re Jacqueline H.* (1979) 94 Cal.App.3d 808, 814 [156 Cal.Rptr. 765]), but in any event I would interpret the language and holding in *Richard E., supra,* page 355 of 21 Cal.3d, that "There is nothing in the record of the instant proceeding suggesting the minor was prejudiced because he was not represented by independent counsel.... [¶] The record discloses and [appellant] suggests nothing which independent counsel for the minor might have done to better protect [the child's] interests" to be referring to a case where the proceedings have been fully reported. Since there was no reporter in this case I believe that reversal is compelled. (Cf. *In re Mary B.* (1971) 20 Cal.App.3d 816, 820-821 [98 Cal.Rptr. 178].) No explanation has been offered for there not having been a reporter present in this case except reference to it not being the custom in the county unless requested. While I sympathize

with reducing costs of government, it is certainly penny-wise and pound-foolish to not have a reporter in cases of this nature. The fact that no one raised the issue of a reporter at the trial level should not deter our consideration thereof as a matter of simple justice.

A minor in juvenile court is statutorily entitled to have the proceedings reported. (Welf. & Inst. Code, § 677; see *In re Steven B.* (1979) 25 Cal.3d 1, 8 [157 Cal. Rptr. 510, 598 P.2d 480].) Interested parties to a termination of parental custody should likewise be so entitled and deserve no less. When the court orders parental custody terminated under Civil Code section 232, the trial court should advise the parent of the right to appeal and to a free transcript, if indigent (*In re Jacqueline H.* (1978) 21 Cal.3d 170, 179 [145 Cal.Rptr. 548, 577 P.2d 683]). Such advice is valueless if there was no court reporter. Termination of parental custody severs all legal relationship between the parent and child. Such a proceeding is simply too important to a parent, the child, others interested in the welfare of the child and society in general to allow such a proceeding without the matter being reported.

I would reverse the judgment with directions to the trial court to appoint counsel for the minor and to conduct a hearing at which the proceedings are fully reported and resolve the issue of whether the facts of the crime of which appellant was convicted are of such nature as to prove the unfitness of appellant to have the future custody and control of the child, and make appropriate findings thereon.