Filed 10/14/14  In re J.A. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re J.A. et al, Persons Coming Under the Juvenile Court Law. | |
| | D065892 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J515303A-B) |
| v. | |
| JOSE A., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Laura

Birkmeyer, Judge.  Affirmed.

Terence M. Chucas under appointment by the Court of Appeal for Defendant and

Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County

Counsel, and Erica R. Cortez, Deputy County Counsel, for Plaintiff and Respondent.

Lisa Storing under appointment by the Court of Appeal for Minors.

Jose A. appeals a juvenile court order terminating his reunification services concerning his daughters, J.A. and J.B.A. He contends the court erred by finding he had been provided reasonable services. We affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

In January 2004, the San Diego County Health and Human Services Agency (the Agency) petitioned on behalf of then five-year-old J.A. and one-year-old J.B.A. (the children) under Welfare and Institutions Code[1] section 300, subdivisions (b) and (g), based on domestic violence and drug use by the children's mother, A.S., and Jose. The petitions further alleged the parents were incarcerated and unable to arrange appropriate care. The court found the allegations under section 300, subdivision (b), to be true and ordered reunification services for A.S. It did not order services for Jose because he was scheduled to be incarcerated for longer than the statutory reunification time and then deported to Mexico. A.S. initially did not participate in services, but then began working toward regaining custody of the children. Her services were terminated in September 2005, but in September 2006, the court granted her section 388 petition, returned the children to her care and ordered visitation for Jose. In September 2007, it terminated jurisdiction, granted A.S. sole custody and provided supervised visitation for Jose, who was living in Mexico.

In October 2012, when J.A. was 14 and J.B.A. was 10, law enforcement officers went to the family home because A.S. was brandishing a knife. A.S. drove away with the

_____

[1]    Statutory references are to the Welfare and Institutions Code.

2

children's infant sister, L.S., and was later arrested for driving under the influence of a controlled substance and child endangerment.[2] The Agency filed section 300 petitions on behalf of all three children, alleging L.S. had been exposed to serious risk of physical harm, and J.A. and J.B.A. were also at risk from A.S.'s drug use and from domestic violence between L.S.'s father, Gregorio S., and A.S. The court sustained the petitions, ordered J.A. and J.B.A. placed in relative care, and ordered reunification services.

Jose said he telephoned J.A. and J.B.A. frequently. He agreed they should be placed in San Diego with their maternal aunt, Leticia V. His case plan included general counseling with an Agency approved counselor or psychologist, a parenting class, random drug testing and visitation. Jose said he did not think he needed services, but would participate if he needed to do so to obtain custody.

Jose reported he inquired about parenting classes in Tijuana, but could not go at the times classes were scheduled. He had not started counseling or drug testing. These services had been requested for him, but there was a waiting list for services in his area. Jose was told several times that he needed to contact the social services agency in Tijuana to begin services. The children visited him in Tijuana a few times and they had frequent telephone visits. A study of his home was positive, but Jose said he believed J.A. and J.B.A. were better off living with Leticia and going to school in San Diego than starting a new life with him in Tijuana.

---

[2]     L.S. is not a part of this appeal.

3

At the six-month review hearing in June 2013, the court found reasonable reunification services had been provided and ordered six more months of services.

The social worker reported he had called Jose numerous times, but was not able to reach him, and Jose never returned his calls. He confirmed Jose knew it was his responsibility to contact the Mexican social services agency to locate services that would fit into his schedule. J.A. and J.B.A. spoke with him frequently and visited him in Tijuana. In November 2013, because Leticia was no longer willing to care for J.A., J.A. was placed with a non-related extended family member. J.B.A.'s placement was changed to the home of maternal aunt, Lidia E. Subsequently, J.A. and J.B.A. began attending conjoint therapy with A.S. J.A. said she wanted to return to A.S.'s care.

In February 2014, arrangements were made for Jose to visit J.A. and J.B.A. at the Mexican-American consulate, but Jose declined to have visits at the consulate offices. The social worker then requested arrangements be made to allow the girls be dropped off at the consulate offices for unsupervised visits with Jose. Jose said he understood it was difficult for J.A. and J.B.A. to come to Tijuana to visit him. He said he wanted to see them, but it would be alright for them not to come if he could continue to contact them by telephone and the internet.

At the 12-month hearing in March 2014, after considering the documentary evidence and argument by counsel, the court terminated Jose's reunification services, finding reasonable services had been offered or provided, but it would be detrimental to return J.A. and J.B.A. to his custody and there was no substantial probability of return by the 18-month date.

4

DISCUSSION

Jose contends the court erred by finding he had been provided reasonable services. He argues in order to show he had mastered parenting skills he needed to have the children in his care; he was not asked to drug test; no referrals were made for counseling, and the Mexican social services agency could not have referred him to an Agency approved therapist; and he was denied reasonable visitation.

In determining the sufficiency of reunification services the role of the appellate court is to decide "whether the record discloses substantial evidence which supports the juvenile court's finding that reasonable services were provided or offered." (*Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 762.) The standard is not that the best possible services were provided, but that reasonable services were provided under the circumstances. (*In re Misako R* (1991) 2 Cal.App.4th 538, 547.) "Reunification services are voluntary, and cannot be forced on an unwilling or indifferent parent." (*In re Jonathan R.* (1989) 211 Cal.App.3d. 1214, 1220.) The appellant bears the burden to show the evidence is insufficient to support the court's findings. (*In re Geoffrey G.* (1979) 98 Cal.App.3d 412, 420.)

Substantial evidence supports the finding Jose was offered reasonable services. Problems in the family included parental neglect, domestic violence and drug use. Although Jose was not named as an offending parent in the 2012 petition, he had a history of domestic violence and substance abuse and he was aware A.S. was physically and emotionally abusing the children, but did not intervene.

5

As to his argument regarding parenting education, he declined to attend parenting classes, saying he did not need the classes and he could not go at times they were offered. When private classes were arranged for him, he said he could not afford them. As for drug testing, his case plan indicated it was up to the discretion of the social worker to ask him to drug test. The court stated it was not concerned that drug tests had not been ordered. If Jose was worried about not drug testing, his counsel could have asked for him to be tested.

His argument regarding the inadequacy of counseling referrals is without merit. In November 2012, the Agency submitted a referral through an international liaison requesting Jose receive services in Tijuana, including drug testing, parenting classes, a home evaluation and visitation at the border. In January 2013, the Agency confirmed with a representative at the Mexican-American consulate that the "aforementioned services and therapy" had been requested for Jose. The social worker emphasized with Jose that he needed to maintain contact with the Mexican social services agency because he was on a waiting list for services as there was a shortage of services in his area. However, the evidence shows he did not keep in contact with the social worker or the Mexican social services agency.

Jose's argument he was not provided reasonable visitation is also unsupported. Jose declined to visit at the consulate. He had visitation when relatives brought J.A. and J.B.A. to visit him, and he said he understood it was burdensome to bring them to Tijuana. He did not object to their living arrangements, but throughout the dependency

6

period said he agreed they should live and go to school in San Diego as long as he was able to continue to have contact with them through telephone calls and the internet.

Jose has not shown he was not offered reasonable reunification services.

DISPOSITION

The order is affirmed.

_____

BENKE, Acting P. J.

WE CONCUR:

_____

NARES, J.

_____

McINTYRE, J.