Filed 3/6/13  In re I.R. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re I.R., a Person Coming Under the Juvenile Court Law. | |
| G.R.,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF HUMBOLDT COUNTY,<br><br>        Respondent;<br><br>HUMBOLDT COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES et al.,<br><br>        Real Parties in Interest. | A137151<br><br>(Humboldt County<br>Super. Ct. No. JV110144) |

## I.  INTRODUCTION

Petitioner G.R., the mother of eight-year-old I.R., has filed this writ petition seeking relief from the juvenile court's order terminating family reunification services and setting a hearing pursuant to Welfare and Institutions Code section 366.26.[1]  Mother contends that she substantially complied with her case plan objectives and should have been granted additional reunification services.  We conclude the contentions have no merit, deny the petition on the merits, and vacate the stay of the section 366.26 hearing.

---

[1] All further unspecified statutory references are to the Welfare and Institutions Code.

1

## II.  FACTUAL AND PROCEDURAL BACKGROUND

On September 27, 2011, the Humboldt County Department of Health and Human Services (Department) filed a petition alleging that the minor came within the provisions of section 300, subdivision (b).  Specifically, the petition alleged that the minor had been with mother in mother's car for at least 24 hours and had not eaten during that time.  Mother admitted to smoking heroin and driving under the influence of heroin while the minor was in the car with her and to "conducting illicit drug activities" with the minor present.  Mother was arrested for felony child endangerment.

The detention report prepared by social worker Winnie Williams indicated that the Eureka Police Department took the minor into protective custody around 5:00 a.m. on September 25, 2011, a Sunday.  The minor was hungry and thirsty but had no medical issues that required a trip to the hospital.  She was also observed to look "filthy" and "was holding a dirty blanket."  The minor reported that she had been in the car all the previous day and that mother had been driving around all night.  Mother initially reported that she had been kidnapped and raped in front of the minor.  Mother admitted to smoking heroin in front of the minor and driving under the influence with the minor in the car.  Mother's boyfriend, David C., contacted the police when he received troubling text messages from mother on Friday night, September 23.  David C. was worried because of mother's history of drug use.

The detention report also stated that, since the birth of I.R. in 2004, the Department has investigated five referrals involving mother.  In 2005, the Department substantiated an allegation against mother for general neglect of I.R. and a sibling.  Mother refused the offer of voluntary maintenance services.

The court held a contested detention hearing on September 30, 2011.  Mother testified at the detention hearing.  The court detained the minor and ordered supervised visitation for mother.

At the jurisdiction hearing on October 11, 2011, mother objected to jurisdiction but submitted the matter without a contested hearing.  The court sustained the petition

and adopted the findings and orders recommended by the Department. The matter was set for disposition on November 8, 2011.

In a report prepared for the disposition hearing, social worker Williams stated that police had been unable to verify mother's report that she had been sexually assaulted, held against her will, and forced to use heroin the weekend I.R. was taken into protective custody. Williams indicated that it was unknown whether mother's issues were predominantly mental health or substance abuse. Mother reported a history of substance abuse but claimed to have been clean for over four years except for using medical marijuana.

David C. told the Department that mother had a diagnosis of bi-polar disorder and was currently taking 11 prescription medications, including antidepressants and pain medication. He also reported that she used medical marijuana pursuant to a 215 card.

The Department recommended a case plan for mother that included a mental health evaluation, a medication evaluation, counseling to address the incident that led to the removal of I.R., and participation in a domestic violence support group. The case plan also required mother to stay free from illegal drugs and show her ability to live free from drug dependency, follow all court orders and conditions of probation; provide a safe home for I.R., demonstrate her ability to appropriately parent I.R. and keep her away from criminal activity, and remain involved in the county AOD (Alcohol and Other Drugs) program. The Department also recommended that mother have four hours of supervised visitation per week.

At the disposition hearing on November 8, 2011, mother indicated that she had no objection to the case plan and submitted on the report. The court declared I.R. a dependent, authorized her placement in foster care, and ordered family reunification services for mother.

Mother participated in a court-ordered psychological evaluation with Dr. Andrew Renouf on November 25, 2011. Dr. Renouf prepared a Forensic Mental Health Assessment for the court summarizing his conclusions. Dr. Renouf noted that mother was being treated for chronic back pain, fibromyalgia, and headaches by Daisy Eng,

M.D. Dr. Eng was aware that mother had a diagnosis of schizoaffective disorder, but she was not treating that condition. Dr. Eng was also aware of mother's history of heroin addiction, and stated that her longer-term goal was to wean mother off of as many of the opioid pain medications as possible.

Dr. Renouf stated that, from a functional standpoint, mother exhibited significant problems with her reality testing and was prone to misperceiving and misinterpreting people's behaviors, events, and situations. He opined that her level of impairment was at least partly the result of her prescribed medications, which included high levels of opiates and hypnotics as well as a benzodiazepine; all three classes of medications can cause psychotic-like symptoms and all have a high potential for abuse. He recommended that mother undergo an independent medication review.

Dr. Renouf also recommended that mother continue to participate in the AOD day treatment program and Narcotics Anonymous, but that the scope of treatment through AOD be broadened to include her use of prescription medications. He further recommended that she receive treatment for post-traumatic stress disorder, opining that it was highly likely that trauma was implicated to some degree in her impaired reality-testing.

On May 30, 2012, the Department filed a six-month status review report prepared by social worker Tara Riddle. Riddle informed the court that, since November 1, 2011, mother had missed 21 visits due to sickness, other appointments, scabies, and hospitalization, and that she had missed 12 of 30 visits offered between January 1 and May 2, 2012. Most of these visits had been canceled because mother was tardy. On March 26, 2012, the Department enacted a policy that mother arrive for a visit before I.R. would be picked up.

Mother had separated from David C. and was now living at the Blue Heron motel with a new partner, S.K. On November 28, 2011, Mother attempted to bring S.K., whom she described to I.R. as "her new father," to a visit without Department approval. When S.K. was not allowed to meet I.R., the incident escalated, with mother screaming and grasping I.R.

4

To obtain approval to attend visits, S.K. agreed to Livescan (a background check). Prior to the investigation, he was "adamant that he had no record of concern." However, the background check revealed that he had been convicted of involuntary manslaughter in 1992 for the death of his own child. He also had two other children who had permanency planning cases. As of the date of the report, S.K. had not met I.R.

In the report, Riddle also stated that mother had discontinued her AOD groups in early December 2011. Mother reported that clinician Sheldon Chase gave her permission not to attend in order to focus on her case plan, but Chase reported that he made no such plan with mother. Since November 1, 2011, mother had twice failed to drug test on the day requested, ignored voicemails asking her to test, and refused entirely to test on January 5 and March 19, 2012, stating that it was against her religion to test while menstruating. Mother stated that she would provide documentation that this was a religious matter, but the Department had yet to receive it.

Riddle stated that mother's behavior and appearance suggested that she was not maintaining sobriety. Riddle noted that, in January, mother's face was covered with sores. Mother had been arrested twice since March for public intoxication and loitering with intent to prostitute, and the police reports noted marks and bruises on her arms indicative of injection of narcotics.

Riddle noted that both Dr. Renouf and the Department had recommended that mother have her medications reevaluated to provide more appropriate and effective pain management. Mother said she would attend a pain management clinic in the Bay Area for the re-evaluation, and Riddle offered to help with making the appointment. The social worker noted that it was strongly recommended that this take place in the next six months of services. On January 13, 2012, mother informed Riddle that she had independently stopped taking some of her medications. On April 18, 2012, she told Riddle that she was titrating off her psychotropic medications and taking herbal supplements instead. Riddle noted that, during the reporting period, mother had manifested bizarre thinking at times.

The social worker reported that mother believes she is being targeted unfairly and being discriminated against by the child welfare system and the dependency court. This led to multiple explosive verbal attacks on the social worker. Despite these outbursts, according to Riddle, mother had maintained good contact with the Department. The Department assigned mother a Parent Partner to assist her in working through the system. The Department also made efforts to accommodate mother's requests by placing I.R. with a foster mother of color and in a foster family that would be supportive of mother's Rastafarian beliefs.

The social worker recommended that mother receive six more months of services, but also recommended inpatient substance abuse treatment.

In a report prepared for the six-month review, CASA wrote that I.R. was thriving in her new foster placement and that her behavior had improved. However, when mother missed visits, I.R. became stressed and acted out inappropriately. CASA recommended that I.R. be placed in a concurrent home at the end of the school year and agreed with the Department's recommendation that mother receive six more months of services.

In a response to the six-month status review report, mother objected to the Department's portrayal of her as not being in compliance with her case plan and to the recommendation for inpatient substance abuse treatment. She stated that she had recently obtained a written AOD assessment and that AOD referred her to outpatient treatment. Mother stated that she had an appointment to attend a scheduled treatment planning session on June 4, 2012. She acknowledged that she stopped attending AOD group sessions, explaining that they were not helpful. Instead, she had been attending Narcotics Anonymous meetings, and she attached her attendance records. Mother stated that she has remained free of illegal drugs. Mother also explained that Dr. Eng conducts routine medication evaluations and drug testing, and would not continue to prescribe medications to her if she had tested positive for illegal drugs. She informed the court that she obtained a restraining order against ex-boyfriend David C., and that she attends domestic violence support services as needed. She requested a supplemental mental health assessment in the next six months because she has made substantial progress in her life

6

since the evaluation with Dr. Renouf in November 2011. She assured the court that she planned to attend all of her future visits with I.R.

At the contested six-month review hearing, the court modified the case plan to allow mother to undergo intensive outpatient treatment for substance abuse. The court set an interim status review for August 28, 2012.

At the August 28, 2012, interim status review hearing, mother did not appear but through her attorney requested adjustments to her case plan to accommodate her religious beliefs. The court instructed mother's counsel to provide the Department with the name of a religious leader who could verify the religious practices and provide the Department with options.

On October 9, 2012, the court set the matter for a contested 12-month review. The Department recommended terminating reunification services and setting the matter for a section 366.26 hearing. Mother contested this recommendation and objected to a request from minor's counsel's to discontinue visitation. Following argument, the court suspended visitation pending the hearing.[2]

Social worker Nathan Ask submitted a status report for the 12-month review hearing that summarized mother's participation in services during the review period. Ask stated that mother had not completed any of the objectives set forth in her case plan. Although mother continued to insist that she had been drug-free since September 2011, observations by former social worker Riddle and review of mother's medical records suggested that mother continued to struggle with opiate addiction and abuse. Riddle discussed her concerns with mother after observing what appeared to be a large injection site on mother's left arm. Mother stated that it was a bedbug bite. On July 24, 2012, Dr. Eng discontinued prescribed narcotics; she found a "high risk of abuse" after several discordant drug tests.

---

[2] Evidence regarding problems with visitation is described *post* in the summary of the social worker's 12-month status review report.

7

Mother had not completed or successfully participated in a substance abuse treatment program. In May 2012, she was assessed by the county AOD program and referred to intensive outpatient treatment, which consisted of two groups per week for 13 weeks. As of September 7, 2012, mother had only attended seven groups. Mother reported to her AOD counselor her abrupt discontinuation of opiate medications and her plan to use marijuana for pain. This change required the counselor to establish a new treatment program. Mother missed her September 6, 2012, appointment to sign the new treatment plan. Mother rescheduled the appointment for September 13, but also missed that appointment. Mother was discharged from the AOD program on September 18, 2012.

Mother did not engage in any formal mental health treatment during the review period. Mother insisted that she did not need any formal treatment or intervention, and claimed that her participation in church activities three times per week was her form of therapy. The social worker contacted the pastor at mother's church, who stated that mother's participation in church activities was roughly 50 percent less than she reported and that her engagement with the congregation was casual and did not include a counseling relationship with any church official.

The report stated that mother continued to reside at the Blue Heron motel in Eureka.

Ask reported that visitation, which continued to be ordered at a minimum of four hours of supervised visitation per week, had been inconsistent in frequency and duration during the review period. The majority of visits were either canceled by mother, shortened by mother's tardiness, or limited in quality due to mother's nodding off or falling asleep. When visits did take place and mother was fully present, however, the interaction between mother and I.R. was loving and consistent with a warm parent-child relationship.

Ask wrote that another barrier to successful visits had recently arisen, specifically, mother's interactions with staff supervising the visits had become hostile and inappropriate. Mother was 35 minutes late for visits on September 11 and 13, 2012, after

8

having canceled visits on September 4 and 6. On September 18, 2012, staff monitoring the visits requested that mother take a moment to meet with them regarding visitation guidelines. Mother refused and became threatening and hostile. Social worker Abbie Bremers reported that mother was yelling threats at the visitation staff while I.R. was present. Mother then canceled her visit on September 20. As previously noted, on October 9, after hearing argument, the court suspended visitation between I.R. and mother pending the 12-month review hearing.

Visits between I.R. and her former guardian Jamie M. occurred regularly throughout the summer. Since the start of the school year, I.R. had spent every other weekend with Jamie M. Jamie M. expressed interest in adopting I.R. if reunification were to fail. The Department was working to facilitate a gradual transition of placement to minimize disruptions to I.R.'s well-being.

I.R. experienced serious behavioral problems during the review period, including multiple suspensions from school and the Boys and Girls Club. Her foster home placement was extremely unstable due to her behavior. On October 26, 2012, minor's counsel filed a section 388 petition seeking to limit mother's educational rights and requesting the appointment of Jamie M. as I.R.'s educational surrogate. Noting that the current recommendation was to terminate services and plan for permanency, counsel explained that I.R.'s current placement was not concurrent and was precarious; the concurrent placement with Jamie M. would require I.R. to change schools; mother appeared to be either unavailable or unwilling to allow the change; the changes requested in the petition would allow I.R. to be placed with Jamie M., go to her new school, and begin the transition to permanency with Jamie M.

On November 7, 2012, the court held the contested 12-month review hearing and a hearing on I.R.'s section 388 petition.

Mother testified that she had done everything required by her case plan, and more. She had not used illegal drugs since September 25, 2011, and maintained her sobriety through support from friends and 12-step programs, AOD, prayer, and meditation. When asked about her progress in complying with court-ordered substance abuse treatment, she

9

testified that she was in the process of completing the program but had not done so because her social worker was going to recommend that I.R. be placed for adoption: "I just felt what was the point of completing the program if—" She stopped getting high in order to set a good example for her children and other young women. She testified that she was using marijuana via a 215 card once a month, and that heavy use would be once a week.

Mother testified that she and her doctor agreed that she would discontinue all psychotropic medications so as not to be dependent on pharmaceutical medication for her mental well-being. She discontinued these medications in January of 2012. As a result, she has clearer thinking.

Mother testified that she was bullied by visitation staff before her visits were suspended. She opposed the limitation of her educational rights to I.R. and felt she was capable of performing them.

Mother stated that, of all the missed visits with I.R. during the last six months, she was at fault one or two times. She did fall asleep during the last 15 minutes of one visit because she felt so comfortable watching a movie with I.R. like they used to when she was at home. Mother said I.R. was always very excited to see her at visits and sad to see her go. Mother also testified about one incident when visitation staff interrupted her time with I.R. to discuss the case, and how upsetting this was to mother.

Regarding the psychological treatment component of her case plan, mother testified that once she was off all of her psychotropic medications she no longer needed psychological evaluation or treatment. She felt that during the last six months her mental health had improved.

Mother stated that she complied with the domestic violence component of her case plan by obtaining a restraining order against her former partner David C. and attended some classes and groups at the Humboldt Domestic Violence Services for a few months. She still goes occasionally when she has time. There is no domestic violence in her current relationship.

10

Mother testified that there was no criminal activity occurring in her home. Regarding an arrest for public intoxication, she said she was not under the influence and no charges were filed. She asked the officer to draw blood or give her a sobriety test.

Mother said she complied with the medication evaluation requirement by having an evaluation every month until her medications were discontinued.

She also testified that she complied with the requirement to provide suitable housing. She acknowledged that her current housing situation at the motel was not ideal, but said that if I.R. were returned to her, I.R. would sleep in the bed with her. Mother said she co-slept with all of her children. She went on to say that she intended to move into an apartment and that I.R. would have her own room. She was hoping to move within a month or two, once the current occupants moved out. If it took longer than that, she would make other arrangements. She testified that her current partner, now her fiancé, is loving, kind, gentle, and patient, and has a great relationship with I.R. despite only having met her a couple of times.

Mother said she had done everything the case plan required. She told the court she felt that nobody else was doing anything they were supposed to do to help her reunify with her daughter. Mother wanted the court to know that her life was very different from what it was when I.R. was first removed. She had done everything asked of her and had repeatedly asked for more visits, more time, and more help from the Department, but was "constantly denied everything." Her visits were repeatedly cancelled, and then that fact was held against her.

On November 8, 2012, the court issued its ruling from the bench. The court stated that it had re-read the entire file and concluded that the statements and information contained in the report were more credible than the evidence presented at the hearing. The court found that mother had not regularly and consistently contacted and visited I.R., that she had not made significant progress in resolving the problems that led to I.R.'s removal, and that she had not demonstrated the capacity or ability to complete her case plan objectives or to provide for I.R.'s protection and physical and emotional well-being. Consequently, the court terminated reunification services and set the matter for a section

11

366.26 hearing to determine a permanent plan for I.R. The court also granted minor's counsel's section 388 petition. Visitation was set at one time every other week for two hours for two months, supervised, on condition that mother meets with the Department regarding her conduct and behavior so that visitation is positive for I.R.

Mother filed a notice of intent to file a writ petition.

### III. DISCUSSION

At the 12-month permanency hearing, "the court shall order the return of the child to the physical custody of his or her parent . . . unless the court finds, by a preponderance of the evidence, that the return of the child to his or her parent . . . would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child." The social worker has the burden to establish such detriment. (Welf. & Inst. Code, § 366.21, subd. (f).) The juvenile court made this finding when it issued its ruling.

Section 366.21, subdivision (g)(1), allows the juvenile court to extend reunification services at the 12-month review hearing if it finds that there is a substantial probability the child can be returned to parental custody within 18 months of the date the child was removed from parental custody. In order to find a substantial probability of return, the court must make three findings set forth in the statute as follows: (1) the parent consistently and regularly contacted and visited the child; (2) the parent made significant progress in resolving the problems that led to the child's removal; and (3) the parent demonstrated the capacity and the ability to complete the treatment plan objectives and provide for the child's safety, protection, and physical and emotional well-being. (§ 366.21, subd. (g)(1)(A)-(C).)

Here, mother argues that she met each of these requirements and substantially complied with each component of her case plan and that she was, therefore, entitled to nearly six more months of reunification services. In ordering the termination of reunification services, the court made the opposite findings, i.e., that mother did not consistently and regularly contact and visit I.R., did not make significant progress in resolving the problems that led it I.R.'s removal, and had not demonstrated the capacity

12

and ability to complete the treatment plan objectives or provide for I.R.'s safety, protection, and physical and emotional well-being.

"If there is substantial evidence to support the findings of the juvenile court, we uphold those findings. (*In re Brandon C*. (1999) 71 Cal.App.4th 1530, 1534.) We do not evaluate the credibility of witnesses, reweigh the evidence, or resolve evidentiary conflicts. Rather, we draw all reasonable inferences in support of the findings, consider the record most favorably to the juvenile court's order, and affirm the order if supported by substantial evidence even if other evidence supports a contrary conclusion. (*In re Autumn H*. [(1994)] 27 Cal.App.4th [567,] 576.) The appellant has the burden of showing the finding or order is not supported by substantial evidence. (*In re Geoffrey G.* (1979) 98 Cal.App.3d 412, 420.)" (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.) For evidence to be considered "substantial," it must be reasonable, credible, and of solid value. (*In re Jason L.* (1990) 222 Cal.App.3d 1206, 1214.) " 'The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record.' [Citation.]" (*In re Savannah M*. (2005) 131 Cal.App.4th 1387, 1394.)

Mother contends that she consistently and regularly visited I.R. She cites her testimony at the 12-month hearing that she was only responsible for one or two missed visits and that all the other missed visits were due to situations out of her control, and points out that the Department did not call any witnesses to refute this testimony. She dismisses the suspension of visitation near the end of the review period as due to her conduct with adults, arguing that it was not related to her loving relationship with her daughter. There are two problems with this argument. First, it ignores our standard of review and the burden of a petitioner in establishing error. Second, it ignores the court's express finding that the statements and information contained in the Department's report were more credible than the testimony presented at the hearing.

Contrary to mother's position, there was ample evidence that she did not contact and visit her daughter consistently and regularly. The report authored by the social worker stated that mother canceled a number of visits and that others were limited by her tardiness. When visits took place, sometimes mother appeared to be nodding off or

13

sleeping. Her hostile and threatening behavior with visitation supervisors resulted in the suspension of visits, further impacting the consistency and regularity of her contact with I.R.

Next, mother acknowledges that her case plan was designed to help her resolve the problems that led to I.R.'s removal and included services to address substance abuse, mental health, medication evaluation, and domestic violence. She again cites her testimony at the hearing as evidence that she has made significant progress on her case plan and in addressing the problems that led to the court's intervention.

However, mother did not complete or successfully participate in a court-ordered substance-abuse treatment program. She continued to deny any drug abuse or addiction issues despite the previous social worker's concerns that mother showed signs of continuing drug abuse; an arrest for public intoxication in March 2012; and her physician's discontinuing prescription narcotics in July 2012 because of drug tests that were inconsistent with prescribed medications. Mother also had not engaged with court-ordered mental health treatment and misrepresented the frequency and nature of her contacts with her church to her social worker.

Mother's profound lack of progress in overcoming the conditions that led to I.R.'s removal also supports the court's finding that mother did not demonstrate the capacity and the ability to complete her case plan or safely parent her daughter. In addition, mother lacked adequate housing for I.R. She proposed to share a bed with her daughter in a motel room that she was also sharing with S.K., her fiancé.[3]

Given mother's continued denial of any substance abuse or mental health issues, combined with her insistence on addressing her own perceived needs in her own preferred ways, the court could reasonably conclude it was not probable that I.R. would be returned to mother if reunification services were extended. On this record, the court's findings that mother failed to consistently and regularly visit I.R., failed to make significant progress on the problems that led to I.R.'s removal, and did not demonstrate

---

[3] S.K. testified that there was no room for I.R. in the motel room.

the capacity and ability to complete her treatment plan or provide for I.R.'s care and well-being were well supported by substantial evidence.

## IV.  DISPOSITION

The petition is denied on the merits.  (Cal. Rules of Court, rule 8.452(h)(1).)  This decision is final as to this court immediately.  (*Id*., rule 8.490(b)(1).)  This court's stay of the section 366.26 hearing shall be dissolved on the filing of this opinion.


_____
Haerle, Acting P.J.


We concur:


_____
Lambden, J.


_____
Richman, J.