Filed 11/4/13 In re H.R. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re H.R., a Person Coming Under the Juvenile Court Law. | |
| | D064002 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. CJ1111) |
| v. | |
| GRISELDA R., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Laura J. Birkmeyer, Judge. Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel and Lisa M. Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

After the juvenile court declared H.R. a dependent of the court under Welfare and Institutions Code section 300, subdivision (c),[1] and removed him from the custody of his father, the court found that H.R.'s noncustodial mother, Griselda R., was not capable of caring for him and placed him in a licensed group home. Griselda appeals from the court's order and challenges the court's denial of H.R.'s placement with her. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

A.    *Factual Background*

Born in 1997, H.R. has been diagnosed with autism, anxiety, depression, attention deficit hyperactivity disorder, and mild mental retardation. Some of his resulting issues include self-injurious behavior, property destruction, and obsessive compulsive behaviors. He functions best in a structured environment and with a stable routine. However, the story of H.R.'s life over the past 10 years has not been one of stability.

In 2003, the court granted H.R.'s father full custody of H.R. after H.R. overdosed on medication while under Griselda's care and after another incident when Griselda left H.R. alone at home. These incidents, combined with H.R.'s behavioral issues, prompted the San Diego County Health and Human Services Agency (the Agency) to open and monitor a voluntary case while H.R.'s father maintained primary custody and Griselda was allowed supervised visitation. Additionally, based on H.R.'s autism and mild retardation, he became a client of the San Diego Regional Center in May 2003 and has

---

1    All further statutory references are to the Welfare and Institutions Code.

2

continued as a patient there since that time. The Agency closed this voluntary case in October 2004 after H.R.'s behavior appeared to stabilize under his father's care.

In October 2009, the Agency opened a second voluntary case when H.R. was hospitalized after experiencing a "psychotic break." This voluntary case involved more services and goals for Griselda than were provided in the first voluntary case. Under this plan, Griselda underwent a psychiatric evaluation that resulted in a diagnosis of personality disorder NOS, posttraumatic stress disorder, and generalized anxiety. The plan also required Griselda to participate in support groups for parents with autistic children, participate in in-home behavior modification services, and to maintain daily routines to provide H.R. structure. However, Griselda failed to comply with these requirements, causing H.R. to be absent from school, experience crisis escalations, and fail to receive his proper medication. When the second voluntary plan was closed in January 2011, Griselda had not made progress with the case plan, but H.R.'s father had adequately participated and demonstrated the ability to meet H.R.'s needs.

However, in March 2011, H.R.'s father voluntarily placed him in a group home through the San Diego Regional Center.[2] At the time of the placement, H.R.'s behavioral issues included self-injurious behavior (e.g., hitting himself, pulling on his ears, and picking or scratching his skin); disruptive behavior (e.g., tantrums, screaming, yelling, and pacing); uncooperative behavior (e.g., refusal to participate in essential routines); and

---

[2]     The father has since stopped participating in H.R.'s care plan and has rarely communicated with the court or any other involved agencies despite numerous attempts to contact him.

3

property destruction.  H.R.'s first group home placement was a highly-structured environment with staff trained to address his issues.  Once he entered this home, his behavioral issues decreased almost immediately.

However, since 2011, H.R. has been placed in several different group homes as a result of Griselda's involvement.  At least three homes have terminated H.R.'s placement after, among other things, Griselda failed to follow visitation plans and returned him to the homes much later than required by court order, causing him to miss his medication and resulting in disruption of his sleep pattern.  Griselda also brought numerous unfounded allegations, including allegations of abuse, against the homes and staff and was generally a disruptive presence in the homes.

During this time, Griselda also demonstrated difficulty in managing H.R.'s behavioral issues.  For example, H.R. frequently refused to leave Griselda's home or get out of her car, making him late for school on several occasions.  During a trial placement of H.R. in Griselda's home, she stopped taking him to school because the school bus service had not yet begun.  Moreover, at an unannounced home visit on May 3, 2013, a social worker saw H.R. slam a door, constantly yell "don't tell me to relax," grab and shake Griselda, and try to slap her.

Additionally, H.R. has often become unstable and violent after visitations with Griselda.  On March 25, 2013, he was hospitalized after he became very agitated and kicked the walls of the foster home upon returning from an unsupervised visit.  On April 10, 2013, H.R. again kicked walls, destroyed his room, and hit himself.  Finally, on April

4

15, 2013, H.R. had a "major meltdown," as he destroyed furniture and a television in his room.

Griselda has also demonstrated a questionable ability to effectively manage her own mental health issues. Although she had been treated for major depression, posttraumatic stress disorder, attention deficit hyperactivity disorder, and a possible eating disorder, she did not attend her mental health appointments regularly and did not take her medications as prescribed. Griselda's failure to comply with her own medication plan is particularly concerning to social workers because it raises doubts that she will be able to maintain H.R.'s medication regimen.

Despite the above issues, Griselda has declined to participate in services offered to her. Consequently, in a jurisdiction/disposition report prepared for the juvenile court, social worker Monica Bonilla opined that "[d]ue to [H.R.'s] extensive mental health issues and his mother also needing to address her own mental health issues, she[,] at this time, is unable to provide a safe, stable and structured environment which [H.R.] will be able to thrive in."

B.  *Procedural Background*

On December 18, 2012, the Agency filed a petition under section 300, subdivision (c), alleging H.R. had emotional disorders requiring mental health treatment, which his parents had failed to provide and were unable to provide. The petition also alleged H.R.'s father had stopped participating in the family's voluntary case plan, that Griselda did not have custody of H.R., and that his caregiver had given notice to

5

terminate his placement. On December 19 and 20, 2012, the juvenile court held a detention hearing and detained H.R. in a licensed group home.

On May 21, 2013, the court held a contested adjudication/disposition hearing with Griselda and social worker Bonilla in attendance. The court heard testimony from Bonilla and admitted into evidence a December 19, 2012, detention report, a January 9, 2013, jurisdiction/disposition report, and addendum reports filed in March, April, and May 2013. The court also received and considered a court-appointed special advocate (CASA) report dated April 22, 2013. Together, these reports recommended that, among other things, H.R.'s custody be removed from his father and H.R. be confidentially placed in a group home.

After considering the documents and testimony, the court made a true finding on the petition, declared H.R. a dependent, removed H.R. from the custody of his father, and found by clear and convincing evidence that Griselda was unable to care for H.R. The court also ordered that H.R.'s CASA hold educational rights due to Griselda's unwillingness to acknowledge H.R.'s needs for specialized services. However, the court ordered that Griselda be included in any educational meetings and be updated on H.R.'s progress.

## DISCUSSION

Griselda challenges the court's finding that placing H.R. with Griselda would have been detrimental to his physical, emotional, and psychological well-being. She asserts that, "[w]hile matters in this case may not have progressed to the point that the juvenile

court should have simply returned [H.R.] to mother and terminate jurisdiction, it should have placed [H.R.] with mother."

We review the juvenile court's findings for substantial evidence. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 576.) The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the finding or order. (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947; *In re Geoffrey G.* (1979) 98 Cal.App.3d 412, 420.)

Here, the juvenile court noted that H.R.'s case had "an extraordinarily long and complex history" and that it had read "every single filing in the case." Based on the evidence, the court found Griselda was aware of H.R.'s "significant challenges," had a history of interfering with or sabotaging efforts to keep him on appropriate medication management and to keep him engaged in school, and "most importantly, impeding his ability to live peacefully and without incident in various group homes and court-designated caregiver homes."

While the long and complex history the juvenile court considered reveals Griselda's concern for H.R., the evidence also demonstrates her inability to properly manage his mental health and behavioral needs and her disruptive influence on his behavior and progress. The evidence also supports the juvenile court's finding that Griselda's own mental health challenges hinder her ability to properly care for H.R. Moreover, Griselda's lack of participation in voluntary services offered her further supports the juvenile court's findings. We conclude that substantial evidence supports the juvenile court's finding that placing H.R. with Griselda would have been detrimental to his physical, emotional, and psychological well-being.

DISPOSITION

The order is affirmed.

                                                                    O'ROURKE, J.

WE CONCUR:


HALLER, Acting P. J.


McINTYRE, J.