Filed 6/30/22  In re Elizabeth C. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re ELIZABETH C., a Person Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ISAAC C. et al., <br><br> Defendants and Appellants. | F083861 <br><br> (Super. Ct. No. JD140630-00) <br><br><br> **OPINION** |

---

## THE COURT[*]

APPEAL from an order of the Superior Court of Kern County.  Christie Canales Norris, Judge.

Beth A. Sears, under appointment by the Court of Appeal, for I.C., Defendant and Appellant.

David M. Thompson, under appointment by the Court of Appeal, for C.D., Defendant and Appellant.

Margo A. Raison, County Counsel, and Jennifer E. Feige, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]      Before Franson, Acting P. J., Snauffer, J. and DeSantos, J.

Christina D. (mother) and Isaac C. (father) appeal the juvenile court's order terminating parental rights to their daughter Elizabeth C. (born December 2019) pursuant to Welfare and Institutions Code section 366.26.[1] They argue the court erred in finding that they had not satisfied the first prong of the parental-benefit exception to adoption— regular visitation and contact. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

**Initial Petition and Detention**

On January 14, 2020, the Kern County Department of Human Services (department) filed a petition on behalf of one-month-old Elizabeth and her three siblings pursuant to section 300, subdivision (b)(1)–(3) alleging she had suffered, or was at substantial risk of suffering, serious physical harm or illness due to the parents' failure to protect her.[2] Mother had a history of substance abuse and had used methadone and heroin while pregnant with Elizabeth. Although father knew of mother's substance abuse, he allowed her to be the children's primary caretaker.

On January 15, 2020, at the detention hearing, the juvenile court ordered Elizabeth detained and granted mother and father supervised visits two times a week for two hours.

**Jurisdiction and Disposition**

On January 16, 2020, mother and father had their first supervised visit. They had two additional visits in February 2020. The department reported mother and father visited consistently.

On March 6, 2020, at the jurisdiction and disposition hearing, the juvenile court found all allegations in the petition true and found Elizabeth to be a person described by section 300, subdivision (b). The disposition hearing was continued.

---

[1]     All further statutory references are to the Welfare and Institutions Code.

[2]     Mother and father had three other children in common. However, those children are not part of this appeal.

From March 2020 to early June 2020, mother and father's visits were cancelled due to COVID-19. During that time, mother reported she maintained daily contact with Elizabeth virtually. Father reported he was having "drive by" visits and video chat visits. In June 2020, mother resumed in-person visits. In July 2020, father was approved for unsupervised visits at his house.

On August 26, 2020, at the continued disposition hearing, the juvenile court ordered reunification services for mother and father. It also extended mother's supervised visits to three times a week for two hours per visit and confirmed that father's visits would remain unsupervised. Mother eventually graduated to overnight visits.

On December 10, 2020, Elizabeth was returned to mother and father's custody on a family maintenance plan.

**Supplemental Petition and Detention**

On April 15, 2021, the department filed a supplemental petition pursuant to section 387 on behalf of Elizabeth, alleging she was at substantial risk of suffering serious physical harm or illness due to mother's ongoing mental health and substance abuse problems after she tested positive for methamphetamine. Father was also named in the petition because he had failed to adequately supervise or protect Elizabeth. Elizabeth was placed into protective custody that same day.

On April 19, 2021, at the detention hearing, the juvenile court ordered Elizabeth detained and granted mother and father supervised visits two times a week for two hours per visit. Mother was ordered to continue participating in substance abuse and mental health counseling and to submit to random unannounced drug testing.

**Disposition and Jurisdiction on the Supplemental Petition**

The jurisdiction report dated May 21, 2021, indicated mother failed to consistently participate in her family maintenance case plan. She failed to drug test seven times and did not participate in substance abuse counseling regularly. She tested positive for amphetamine and methamphetamine twice and abused alcohol. Father admitted he knew

about mother's alcohol abuse and did not call law enforcement during an altercation in which mother broke a door in the home.

The disposition report, also dated May 21, 2021, further provided that a social worker contacted mother and father about scheduling visits in April 2021. They had one visit that month. They then agreed to one weekly four-hour visit commencing in May 2021.

On May 15, 2021, a social worker supervised a visit between Elizabeth, her siblings, mother and father, and extended family members. Mother provided for the children's needs by taking them to the bathroom and changing diapers when required. She walked Elizabeth around the park and kept her near the family area. The visit went well.

The report noted mother and father had been "partially cooperative" with the department. They refused to sign the initial voluntary case plan and had not provided verification that they had enrolled in the components of their case plan, but had been visiting the children regularly. The department recommended mother receive reunification services because she had visited the children consistently and had reenrolled in substance abuse and mental health counseling. The department also recommended father receive reunification services because he had been visiting with the children consistently and continued to be enrolled in failure to protect counseling. The department noted visits with mother and father were going well.

On June 3, 2021, at the jurisdiction and disposition hearing, the juvenile court found the allegations of the supplemental petition true and found that the previous orders had not been effective in protecting Elizabeth. The disposition hearing was continued.

A supplemental report dated June 11, 2021, stated the department conducted an adoption review on behalf of Elizabeth and determined she was appropriate for adoption or guardianship planning. The department recommended the parents not be offered reunification services because they were "out of time" as they had already received 18 months of services.

A supplemental report dated July 13, 2021, noted that the parents had not made any progress in their voluntary case plans. Mother had not made herself available to the department at all and father had only made himself available to discuss placement or visits.

A supplemental report dated August 26, 2021, indicated that father had not made himself available to discuss visits for two months. The social worker had made multiple attempts to contact the parents regarding visitation without success. Both parents had not made any progress in their voluntary case plans and had failed to make themselves available to discuss visits. The department recommended that neither mother nor father receive reunification services as they had already received over 18 months of reunification services.

On September 1, 2021, at the continued disposition hearing, Elizabeth was adjudged a dependent of the juvenile court and was removed from the parents' custody. The court found that mother's progress toward alleviating or mitigating the causes necessitating placement had been moderate and that father's progress had been minimal. Mother and father were denied reunification services pursuant to section 361.5, subdivision (a)(3). The parents had received over 18 months of reunification services, and it was unlikely Elizabeth would return to their care. Mother and father were each granted supervised visits two times a week for two hours per visit. The court ordered a section 366.26 hearing be set.

**Section 366.26**

The section 366.26 report stated that mother could have visited Elizabeth 168 times, but only visited 39 times. Father could have visited 154 times, but only visited 31 times. Both mother and father's visits were age-appropriate and Elizabeth appeared to enjoy the visits with each parent as evidenced by her smiles and laughter. The department noted Elizabeth had lived with the parents for a total of four months of her life. Because mother and father had not visited consistently, there was a "limited relationship" between Elizabeth and each parent and any detriment she would experience

from terminating parental rights would be outweighed by the benefits and permanency of adoption. In assessing the degree of detriment that Elizabeth would suffer, the department considered her age and the degree of attachment she had to each parent. Because Elizabeth was likely to be adopted due to her age, the department recommended mother and father's parental rights be terminated and that she be placed for adoption.

On January 24, 2022, at the continued section 366.26 hearing, mother made an offer of proof that she believed the number of visits listed in the department's section 366.26 report was "incorrect and that [she] had many more visits than those indicated." She noted that Elizabeth lived with her for at least four months and that the juvenile court should apply the parental-benefit exception to adoption because she had satisfied all three elements of the exception. Similarly, father made an offer of proof that the number of visits noted in the section 366.26 report was incorrect and that he had attended every scheduled visit. He also asked the court to apply the parental-benefit exception.

In ruling on the parental-benefit exception, the juvenile court stated as follows:

> "All right. Regarding the parents' offer of proof, I do accept that that's what they would testify to. I do not find their testimony to be credible based on the information in the [section 366.26] report and the information throughout the court record.

> "There have been numerous visits. There's no way this court can find that there has been regular visitation. I do not believe the parents have met their burden to show there would be substantial emotional attachment that Elizabeth would have towards her parents even based on the minimal, at best, visitation between the parents and Elizabeth."

The court then found there was clear and convincing evidence Elizabeth was likely to be adopted and terminated mother and father's parental rights.

In February 2022, mother and father filed notices of appeal.

**DISCUSSION**

I.      **Substantial Evidence Supports the Juvenile Court's Finding that the Parental-Benefit Exception to Adoption Did Not Apply**

   A.      **Legal Principles**

"The sole purpose of the section 366.26 hearing is to select and implement a permanent plan for the child after reunification efforts have failed." (*In re J.D.* (2021) 70 Cal.App.5th 833, 851.) "At a permanency plan hearing, the court may order one of three alternatives: adoption, guardianship or long-term foster care." (*In re S.B.* (2008) 164 Cal.App.4th 289, 296.) "Once the court determines the child is likely to be adopted, the burden shifts to the parent to show that termination of parental rights would be detrimental to the child under one of the exceptions listed in section 366.26, subdivision (c)(1)." (*Id*. at p. 297.) "[I]f the parent shows that termination would be detrimental to the child for at least one specifically enumerated reason, the court should decline to terminate parental rights and select another permanent plan." (*In re Caden C.* (2022) 11 Cal.5th 614, 630–631 (*Caden C.*).)

One exception to adoption is the parental-benefit exception, which requires the parent to establish, by a preponderance of the evidence, "that the parent has regularly visited with the child, that the child would benefit from continuing the relationship, and that terminating the relationship would be detrimental to the child." (*Caden C.*, *supra*, 11 Cal.5th at p. 629; see also § 366.26, subd. (c)(1)(B)(i).)

"The first element—regular visitation and contact—is straightforward. The question is just whether 'parents visit consistently,' taking into account 'the extent permitted by court orders.' " (*Caden C.*, *supra*, 11 Cal.5th at p. 632.) "As to the second element, courts assess whether 'the child would benefit from continuing the relationship.' " (*Caden C.*, at p. 632.) "In other words, '[t]he parent must show that the child has a substantial, positive, emotional attachment to the parent—the kind of attachment implying that the child would benefit from continuing the relationship.' " (*In re J.D.*, *supra*, 70 Cal.App.5th at p. 854.) "[T]he focus is the child." (*Caden C.*, at

p. 632.)  The court may consider " '[t]he age of the child, the portion of the child's life spent in the parent's custody, the "positive" or "negative" effect of interaction between parent and child, and the child's particular needs.' " (*Ibid*.)  "[C]ourts often consider how children feel about, interact with, look to, or talk about their parents." (*Ibid*.)  "Interaction between natural parent and child will always confer some incidental benefit to the child.  The significant attachment from child to parent results from the adult's attention to the child's needs for physical care, nourishment, comfort, affection and stimulation." (*In re Autumn H.* (1994) 27 Cal.App.4th at 567, 575.)

"Concerning the third element—whether 'termination would be detrimental to the child due to' the relationship—the court must decide whether it would be harmful to the child to sever the relationship and choose adoption." (*Caden C.*, *supra*, 11 Cal.5th at p. 633.)  The court must determine "how the child would be affected by losing the parental relationship—in effect, what life would be like for the child in an adoptive home without the parent in the child's life." (*Ibid*.)  "[T]he effects [on the child] might include emotional instability and preoccupation leading to acting out, difficulties in school, insomnia, anxiety, or depression.  Yet … a new, stable home may alleviate the emotional instability and preoccupation leading to such problems, providing a new source of stability that could make the loss of a parent not, at least on balance, detrimental." (*Ibid*.)  "When the relationship with a parent is so important to the child that the security and stability of a new home wouldn't outweigh its loss, termination would be 'detrimental to the child *due to*' the child's beneficial relationship with a parent." (*Id*. at pp. 633–634.)  "When it weighs whether termination would be detrimental, the court is not comparing the parent's attributes as custodial caregiver relative to those of any potential adoptive parent(s)[,]" and it "should not look to whether the parent can provide a home for the child .…" (*Id*. at p. 634.)  "Even where it may never make sense to permit the child to live with the parent, termination may be detrimental." (*Ibid*.)  "[T]he section 366.26 hearing is decidedly not a contest of who would be the better custodial caregiver." (*Ibid.*)

Moreover, "[a] parent's continued struggles with the issues leading to dependency are not a categorical bar to applying the exception." (*Caden C.*, *supra*, 11 Cal.5th at p. 637.) "[W]hen the court holds a section 366.26 hearing, it all but presupposes that the parent has not been successful in maintaining the reunification plan meant to address the problems leading to dependency." (*Ibid.*) "The parental-benefit exception can therefore only apply when the parent has presumptively *not* made sufficient progress in addressing the problems that led to dependency." (*Ibid.*) Thus, "[p]arents need not show that they are 'actively involved in maintaining their sobriety or complying substantially with their case plan' [citation] to establish the exception." (*Ibid.*) However, lack of progress is not irrelevant. "A parent's struggles may mean that interaction between parent and child at least sometimes has a ' "negative" effect' on the child." (*Ibid.*) "Conversely, a parent who gains greater understanding of herself and her children's needs through treatment may be in a better position to ensure that her interactions with the children have a ' "positive" … effect' on them." (*Id.* at pp. 637–638.) "In both scenarios, the parent's struggles speak to the benefit (or lack thereof) of continuing the relationship and are relevant to that extent." (*Id.* at p. 638.) They "may also be relevant to the detriment from terminating parental rights." (*Ibid.*)

On review, the first two elements are reviewed for substantial evidence. (*Caden C.*, *supra*, 11 Cal.5th at p. 639.) "In reviewing factual determinations for substantial evidence, a reviewing court should 'not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts.' [Citation.] The determinations should 'be upheld if … supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence.' " (*Id.* at p. 640.) The third element is reviewed for abuse of discretion. (*Ibid.*) A court abuses its discretion only when it " 'has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination.' " (*In re Geoffrey G.* (1979) 98 Cal.App.3d 412, 421.) "When two or more inferences can reasonably be deduced from the facts, the reviewing court has no

9.

authority to substitute its decision for that of the trial court." (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478–479.)

**B.    Analysis**

Mother and father contend that substantial evidence does not support the juvenile court's finding that they failed to visit Elizabeth regularly.  We disagree.

The first element of the parental-benefit exception requires parents to prove regular visitation and contact.  (*Caden C.*, *supra*, 11 Cal.5th at p. 632.)  "The question is just whether 'parents visit consistently,' taking into account 'the extent permitted by court orders.'  [Citation.]  Visits and contact 'continue[ ] or develop[ ] a significant, positive, emotional attachment from child to parent.' "  (*Ibid.*)

Here, the juvenile court accepted mother and father's offers of proof that the section 366.26 report incorrectly categorized the number of visits they attended.  However, the court did not find the parents to be credible based on the information contained in the section 366.26 report and other information throughout the record.  The court recognized "[t]here [had] been numerous visits[,]" but said there was "no way [it could] find that there [had] been regular visitation."  As a reviewing court, "we cannot reweigh the evidence or evaluate witness credibility.  [Citation.]  We must uphold the juvenile court's factual determination as long as it is supported by substantial evidence ' "even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence." ' "  (*In re Eli B.* (2022) 73 Cal.App.5th 1061, 1072.)

The record reflects mother and father had regular visits and contact with Elizabeth for the first 18 months of the dependency proceedings (i.e., up until May 2021).  In July 2021, the department reported mother had stopped making herself available to the department and father only made himself available to discuss placement and visits.  In August 2021, the department further reported that father stopped making himself available to discuss visitation at some point during the previous month.  The social worker had "made multiple attempts to make contact with the parents to discuss their

case plan and visits with no success." The social worker also attempted to reschedule two visits that same month, but neither mother nor father responded to the social worker's calls. In December 2021, the section 366.26 report indicated the parents had not visited Elizabeth consistently. Mother participated in 39 visits out of 168 possible visits, and father participated in 31 visits out of 154 possible visits. Although mother and father argue that the section 366.26 improperly characterized their visits, earlier reports indicate that mother and father stopped visiting Elizabeth regularly in May 2021. Thus, substantial evidence supports the court's finding that mother and father did not have regular visitation with Elizabeth.

Even assuming for argument's sake that mother and father had proven they maintained regular visitation and contact with Elizabeth, there is no evidence she would benefit from continuing a relationship with them. At the time parental rights were terminated, Elizabeth had just turned two years old and had only spent four months of her short life in mother and father's care. Although visits were going well and she appeared to enjoy the visits, a parent must show that the relationship confers more than "some incidental benefit." (*In re Autumn H.*, *supra*, 27 Cal.App.4th at p. 575.) " 'A biological parent who has failed to reunify with an adoptable child may not derail adoption merely by showing the child would derive *some* benefit from continuing a relationship maintained during periods of visitation with the parent. [Citation.] A child who has been adjudged a dependent of the juvenile court should not be deprived of an adoptive parent when the natural parent has maintained a relationship that may be *beneficial to some degree*, but that does not meet the child's need for a parent.' " (*In re Jason J.* (2009) 175 Cal.App.4th 922, 937.) Based on the record before us, we cannot conclude that substantial evidence supports that Elizabeth would benefit from a continued relationship with mother and father.

Additionally, as to the third element—whether termination of parental rights would be detrimental to Elizabeth—we conclude mother and father did not meet their burden of establishing that Elizabeth would suffer detriment. A finding of detriment is

11.

based on the child's best interest, and the juvenile "court must decide whether the harm from severing the child's relationship with the parent outweighs the benefit to the child of placement in a new adoptive home." (*Caden C.*, *supra*, 11 Cal.5th at p. 632.) Because Elizabeth had a limited relationship with mother and father, any detriment would be outweighed by the benefits and permanency that adoption would provide her with.

Accordingly, we find no error in the juvenile court's determination that the parental-benefit exception did not apply.

## **DISPOSITION**

The juvenile court's order terminating mother and father's parental rights is affirmed.