Filed 6/28/23  In re L.P. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re L.P. et al., Persons Coming Under the Juvenile Court Law. | C097146 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>Joe C.,<br><br>Defendant and Appellant. | (Super. Ct. Nos. JD240297, JD240298, JD240299, JD240300, & JD240301) |

Appellant Joe C. (father), father of the minors, appeals from the juvenile court's jurisdiction/disposition orders.  (Welf. & Inst. Code, §§ 300, 355, 395.)[1]  Father contends the court erred in overruling his objection to hearsay statements in the detention report

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

and in failing to support its jurisdictional findings with substantial evidence. He further contends the court's denial of his request for a continuance and a contested hearing was an abuse of discretion. Disagreeing, we affirm.

BACKGROUND

Father and Je.C. (mother) have five children: L.P. (age 8), Ja.C. (age 9), M.C. (age 13), J.C. (age 15), and Jo.C. (age 17) (the minors). Father and mother participated in family maintenance services in Sacramento County from December 2019 to January 2022, including domestic violence services, substance abuse treatment, and parenting programs, all of which were successfully completed by the parents.

The family again came to the attention of the Sacramento County Department of Child, Family and Adult Services (Department) on September 8, 2022, when child protective services (CPS) received a report that the parents were engaged in a domestic dispute in the presence of the minors, during which the eldest minor, Jo.C. discharged a firearm in an attempt to diffuse the situation. Mother sustained an injury to her thumb that officers believed had been caused by father stabbing her. Law enforcement observed the interior of the home to be in disarray, with blood and broken glass everywhere. There was minimal food, and the home was infested with cockroaches. The parents and the minors were uncooperative with law enforcement officers. The officers observed mother to be excessively texting and thought she was instructing the minors not to provide any information. Father was arrested and taken to jail, and the minors were placed in protective custody.

When interviewed, the minors denied their parents had a history of domestic violence and gave vague answers that were protective of the parents. Mother minimized the history of domestic violence between her and father and claimed her thumb injury was from an attack by a homeless person. Father was eventually interviewed, and he too denied any history of domestic violence with mother. He also claimed the poor condition of the home was due to the family preparing to move. The Department also interviewed

2

the paternal grandmother, who was concerned for father's untreated mental health and noted father had a history of drug use. The paternal grandmother warned that, if the Department did not intervene, the minors and/or the parents would be seriously injured or killed. She believed mother would continue to minimize the domestic abuse, protect father, and coach the minors to protect father.

On September 12, 2022, the Department filed dependency petitions on behalf of the minors pursuant to section 300, subdivisions (a) (serious physical harm) and (b) (failure to protect). The petitions alleged the parents had a history of domestic violence and continued to engage in domestic violence in the presence of the minors, placing the minors at substantial risk of suffering serious physical harm. The petitions further alleged that father had untreated anger management issues that impaired his ability to provide adequate care for the minors, mother denied and minimized father's violent actions and failed to protect the minors, and the parents engaged in domestic violence resulting in injuries to mother and placing the minors at substantial risk of serious physical harm, abuse, and neglect.

At the September 16, 2022, detention hearing, the Department requested the court order the minors detained. The minors' guardian ad litem (GAL) noted that, while the minors disputed the allegations in the petitions and wished to return home to the parents' custody, the GAL disagreed and requested the court detain the minors out of the home. Mother denied the allegations in the detention report, noted father was no longer living in the family home, and requested the minors be returned home or, in the alternative, placed with the paternal grandmother. Father also denied the allegations in the petitions, confirmed he had vacated the family home, and requested the minors be returned to mother with liberal visitation and reunification services for father. Minor Jo.C. informed the court that he and the other minors were asleep during the alleged incident and had no knowledge what happened between the parents. Minors M.C. and J.C. requested to be returned home to the parents. The court explained that it was up to the parents to set an

3

evidentiary hearing, ordered services for father, and set the matter for a jurisdiction/disposition hearing, explaining that it needed more evidence to reveal what happened in the home before it would be willing to return the minors to mother's custody.

On October 3, 2022, the Department reported that mother denied any domestic violence and claimed the minors were removed due to the poor conditions and lack of food in the home. Mother blamed the allegations of historical domestic violence on the fact that the police department "did not like her family." Father failed to make himself available to the Department for an interview. The minors were each interviewed and again stated they did not know why they had been removed from the parents' custody.

The Department further reported that the family's landlord had informed CPS she was in the process of evicting the family due to ongoing violence, drug use, and public nuisance. She inspected the family's home and saw broken windows, holes in the walls, and holes in the bathroom door, all which father claimed had been caused by the minors. The landlord reported father was very violent and mother did not want to press charges against him.

The Department reported that the petition filed in the family's previous case in 2019 alleged father had untreated anger management issues and mother failed to protect the minors from father's domestic violence that included destroying items inside and outside of the home, kicking mother several times in the foot on which she had recently had surgery, and hitting the family vehicle with a sledgehammer, smashing out the rear window. In that case, the parents completed family maintenance services, including domestic violence, parenting, and substance abuse programs, and the case was closed on January 19, 2022.

According to the October 4, 2022, report, the paternal grandmother stated that, although the parents were doing random drug tests, mother had admitted to finding drugs in the home and throwing them away. The paternal grandmother would not " 'cover for

4

mother or father.' " Father had revealed to the paternal grandmother that he was using cocaine prior to the incident leading to removal of the minors. The paternal grandmother denied father's claim that her accusations were made because father and mother had a lot of money and did not buy her things, stating she and her husband often had to give the parents money and buy items for the minors. Paternal grandmother reported that the mother instructed the minors not to say anything. According to the paternal grandmother, during the family's prior CPS case, father was present in the home against court orders, and mother lied about his presence to the Department. The paternal grandmother called the police only after minor M.C. told her father had a gun. On the day father stabbed mother, Jo.C. told paternal grandmother that father was threatening to cut the minors so "they had to get a knife to protect themselves." The paternal grandmother believed the minors were not safe with the parents. The paternal grandmother was worried father would do something to the minors or the minors would do something to father, as they had beat up father in the past. The paternal grandmother was willing to testify about everything because she was " 'tired of it.' "

The social worker was eventually able to interview father, who claimed the allegations in the petitions were all lies. When asked how mother sustained injuries to her thumb, father stated, " 'She told you already.' " The social worker asked father to explain his account of the incident and father stated, " 'I wasn't there I didn't have my phone, I was at my cousin[']s.' " The ongoing calls to law enforcement were likely from a neighbor who did not like his family. He did not want the minors placed with the paternal grandmother due to all the " 'allegations she has made' " and because she wanted the two younger minors only for the money they received from Social Security. Father denied any drinking or drug use. When asked what services he believed he would benefit from, father stated he did not need any services and he was " 'perfectly fine.' " He moved out of the family home immediately following removal of the minors and was

living with his cousin, but he would not provide an address. The social worker noted that it appeared father was being "coached" during the telephone interview.

Both parents and the minors were present with counsel at the October 7, 2022, jurisdiction/disposition hearing. When the court stated its understanding that there was a request to have a trial without witnesses, the parents' respective counsel stated, "Yes, your Honor." The court confirmed having read and considered the September 13, 2022, detention report and the October 7, 2022, jurisdiction/disposition report. The Department requested the court sustain the petitions and adopt the recommended findings and orders, including ordering that the minors remain in out-of-home placement and services be provided to both parents. The GAL informed the court that, although the minors denied the allegations in the petitions and wished to return home to the parents, "in light of the evidence contained within the report, I am unable to agree with that position at this time." The GAL stated the evidence showed "there was, at the minimum, an incident, even though perhaps not exactly as described," and requested that the court sustain the petitions and, if necessary, conform the petitions to proof.

Mother's counsel informed the court that mother had no additional evidence or witnesses to present and entered objections and general denials to the allegations contained in the petitions and the two reports. Mother also objected to the minors' out-of-home placement.

Father's counsel stated father had no additional evidence or witnesses to present. Counsel objected pursuant to section 355 to statements in the September 2022 detention report, arguing that while police officers' statements were protected hearsay, statements to the police officers were not protected hearsay and would not be admissible on any grounds. In particular, counsel objected to statements made by a hospital employee to law enforcement regarding a female trying to leave the hospital who had been stabbed, neighbors reporting hearing gunshots and the parents fighting with all four minors present, an anonymous caller regarding a car blocking the sidewalk, an unknown person

6

regarding a motorcycle driving 50 miles per hour, and a pizza delivery driver regarding a male holding and firing a gun. Counsel also objected to the court sustaining the petitions, arguing the case was "devoid of any real evidence of domestic violence" aside from evidence the house was in disarray, there were cuts in some of the couches and upholstery, there was glass and blood on the floor, and "there may have been some arguing." Counsel also argued it was not the parents' burden to explain away allegations of domestic violence.

The Department asked the court to reject father's section 355 motion as untimely or, alternatively, to consider the numerous statements in the reports corroborating the alleged hearsay statements. With regard to the timeliness argument, father's counsel countered that the jurisdiction/disposition report indicated it was distributed on October 3, 2022, but he did not receive the report until October 6, 2022, the day before the hearing, and therefore did not have sufficient time to prepare objections. The Department replied that father's remedy was to request a continuance pursuant to section 355, subdivision (b)(3).

The court first noted that hearsay in social study reports is admissible pursuant to section 355; however, if a party raises a timely objection to admission of specific hearsay in the report, the specific hearsay shall not be sufficient by itself to support the jurisdictional findings. The court overruled father's objection as untimely because it was not made before the hearing and the Department was not given reasonable time to respond.

Father's counsel argued he informed the Department "this morning" that he intended to object pursuant to section 355 and, in light of the court's ruling on his objection, he was requesting a continuance for a contested hearing. The court denied the request and adopted the Department's recommended findings and orders sustaining the petitions, taking jurisdiction over the minors, continuing the minors in out-of-home placement, and ordering reunification services for both parents.

7

DISCUSSION

Father contends the juvenile court abused its discretion when it failed to address his objection to certain hearsay evidence contained in the detention report and denied his request to continue the hearing. He claims he was not provided the jurisdiction/disposition report within a reasonable time before the hearing. (§ 355, subd. (b)(3).) He further claims he raised a timely objection to the admission of specific hearsay in the report pursuant to section 355, subdivisions (c)(1) and (c)(2).

The Department argues father's objection was untimely and, in any event, the court's jurisdictional findings were supported by substantial evidence. We agree the objection was untimely and that the jurisdictional findings were otherwise sufficient to sustain the petitions.

Section 355, subdivision (a) provides that for purposes of a jurisdictional hearing, "[a]ny legally admissible evidence that is relevant to the circumstances or acts that are alleged to bring the minor within the jurisdiction of the juvenile court is admissible and may be received in evidence." A social study and the hearsay evidence contained in it are admissible and constitute competent evidence on which a finding of jurisdiction pursuant to section 300 may be based, to the extent allowed by section 355, subdivisions (c) and (d). (§ 355, subd. (b).) "If a party to the jurisdictional hearing raises a timely objection to the admission of specific hearsay evidence contained in a social study, the specific hearsay evidence shall not be sufficient by itself to support a jurisdictional finding . . . ." (§ 355, subd. (c)(1).)

Father was present with counsel at the contested jurisdictional/dispositional hearing on October 7, 2022. Father acknowledged his request to proceed to trial without witnesses. He confirmed he had no witnesses or additional evidence to present and then, for the first time, objected to statements in the detention report (filed Sept. 13, 2022) as inadmissible hearsay pursuant to section 355. Father's counsel argues, as he did in the trial court, that the objection was timely given that counsel had been provided with the

8

jurisdiction/disposition report only the day prior to the hearing, and that he advised the Department the morning of the hearing that he would be objecting pursuant to section 355. "[A]n objection is timely if it identifies with reasonable specificity the disputed hearsay evidence and it gives the petitioner *a reasonable period of time* to meet the objection *prior to a contested hearing*." (§ 355, subd. (c)(2), italics added.) Here, father did not object until the contested proceedings had begun, thus depriving the Department of a reasonable period of time to respond to the objections. Even assuming he told the Department prior to the hearing that he would be objecting, he failed to demonstrate that he identified with reasonable specificity the disputed hearsay evidence at that time.

We note that father argues he did not object sooner because he received the *jurisdiction/disposition report* only one day before the hearing. However, the disputed hearsay evidence to which he objected consisted of various statements set forth in the *detention report* filed nearly one month prior to the contested hearing. Father argued in the juvenile court that the purpose of the jurisdictional report is to "fill[ ] in the gaps of the hearsay" contained in the detention report. Yet, when he received the jurisdiction/disposition report and determined that report did not provide corroboration for the challenged statements, he did not notify the Department of his intent to object until the morning of the contested hearing and therefore did not give the Department a reasonable period of time to respond. Father's objections were untimely.

Next, father contends the court erred when it denied his request for a continuance that he claims was made "at the beginning of the proceedings." Section 355, subdivision (b)(3) provides, "The court may grant a reasonable continuance not to exceed 10 days upon request by any party if the social study is not provided to the parties or their counsel within a reasonable time before the hearing." As discussed above, father received the jurisdiction/disposition report the day prior to the hearing and, although he took issue with certain hearsay statements in the detention report he received a month prior to the hearing, he did not timely object to the hearsay statements or immediately request a

9

continuance for a contested hearing. Instead, father confirmed his request to proceed to trial without witnesses. The court acknowledged its receipt and consideration of the two reports, and father confirmed he had no additional evidence or witnesses to present. Father then lodged his hearsay objection that the court denied. It was not until that point that father requested a continuance. The court did not abuse its discretion in denying father's request for a continuance.

In any event, there was otherwise substantial evidence in the record to support the juvenile court's jurisdictional findings. We review the jurisdictional findings for substantial evidence, reviewing the record in the light most favorable to the judgment and drawing all reasonable inferences from the evidence to support the findings and orders of the dependency court. (*In re I.J.* (2013) 56 Cal.4th 766, 773.) Father, as appellant, has the burden of proving the evidence was insufficient to sustain the juvenile court's findings. (*In re Geoffrey G.* (1979) 98 Cal.App.3d 412, 420.)

Here, there was substantial evidence that supported the jurisdictional findings to which father did not object. For example, the petitions alleged the parents engaged in acts of domestic violence in the presence of the minors during which father stabbed mother causing injury to her thumb that required medical intervention. The supporting evidence included: (1) the referral from the mandated reporter to CPS regarding the domestic violence incident on September 8, 2022; (2) mother's differing accounts of how she suffered the injury to her thumb and the inability of either parent to provide a plausible explanation for the injury; (3) the condition of the home (e.g., glass and blood all over the floor, windows broken out, and couch cushions cut); (4) the paternal grandmother's statements regarding father's untreated mental health and her fear that the minors and/or the parents would be injured or killed without Department intervention; (5) law enforcement's multiple trips to the family home during a 12-hour period the day of the incident due to disturbance calls; (6) the landlord's report that father was very violent and the family was being evicted due to ongoing violence, drug use, and public

10

nuisance; and (7) minor L.P.'s statement on the day of the incident that mother " 'got hurt, but my daddy didn't hit my mom,' " followed by, " 'I don't know what happened.' " The petitions also alleged the parents' history of domestic violence and father's untreated anger issues. The supporting evidence included the sustained allegations in the prior case that father destroyed items inside and outside the home, kicked mother's injured foot, smashed out the rear window of the family vehicle with a sledgehammer, and the parents' continued denial of historical and current domestic violence, and father's inability or unwillingness to acknowledge domestic violence and his anger issues despite having completed nearly two years of services in those areas in the prior dependency case.

Dependency jurisdiction is appropriate where substantial evidence supports at least one jurisdictional finding. (*In re Ashley B.* (2011) 202 Cal.App.4th 968, 979.) There was sufficient evidence, even in the absence of the hearsay statements challenged by father, to support the court's jurisdiction over the minors.

DISPOSITION

The juvenile court's orders are affirmed.


 /s/
MESIWALA, J.


We concur:


 /s/
HULL, Acting P. J.


 /s/
RENNER, J.


11